AMY R. LEVINE, State Bar No. 160743
SARAH L. W. SUTHERLAND, State Bar No. 239889
AMY E. KOERS, State Bar No. 280062
Dannis Woliver Kelley
Symphony Towers
750 B Street, Suite 2310
San Diego, CA 92101
Telephone: (619) 595-0202
Facsimile: (619) 702-6202

Attorneys for Plaintiff
SAN DIEGO COUNTY OFFICE OF EDUCATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| SAN DIEGO COUNTY OFFICE OF EDUCATION, | **'13CV1647 BEN BLM** |
|---|---|
| Plaintiff, | **COMPLAINT FOR RELIEF UNDER THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT** |
| v. | |
| JULIA POLLOCK, as parent on behalf of M.P., a minor, Defendant. | |

### INTRODUCTORY STATEMENT

1. The San Diego County Office of Education ("SDCOE") brings this action to overturn portions of the decision of the California Office of Administrative Hearings ("OAH") in *Parent on Behalf of Student v. San Diego County Office of Education*, OAH Case No. 2012110566.

2. In January 2012, M.P. a then ten year old student in the Cajon Valley Unified School District ("Student"), was detained by the San Diego County Juvenile Court ("Juvenile Court") in the Kearny Mesa Juvenile Detention Facility ("KMJDF" or "Juvenile Hall") after he stabbed and killed another boy in front of his home over a long weekend ("January 2012 incident"). Before his arrest in January 2012, Student had attended his neighborhood school, the W.D. Hall Elementary School in the Cajon Valley Unified School District ("CVUSD"), where he

successfully accessed the educational program. He participated in the general education program at the beginning of the 2011-2012 school year with resource specialist support, and then later in the year was placed in a special day class for students with social, emotional and/or behavioral needs.

3. During his detainment in KMJDF, Student attended Sarah Anthony School, a Juvenile Court and Community School ("JCCS"), operated by SDCOE. The county office of education is responsible for administration of Juvenile Court and Community Schools and the provision of a free appropriate public education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§1400, et seq., to individuals who are confined in a juvenile hall or other juvenile detention facilities within that county. Cal. Educ. Code §§ 48645.1, 48645.2, 56150. At Sarah Anthony School, SDCOE provided Student with special education and related services in accordance with his Individualized Education Program ("IEP") under the IDEA. 20 U.S.C. § 1414(d)(1)(A). It conducted his triennial assessment and IEP review in February and March of 2012, which included a psycho-educational evaluation, academic assessments, and an occupational therapy ("OT") evaluation to ensure his educational needs were appropriately addressed through the program at Sarah Anthony School. The IEP team also considered an Educationally Related Mental Health Services Assessment conducted by San Diego County Health and Human Services Agency ("HHSA") and an independent educational evaluation of his mental health needs. In total, SDCOE convened seven separate IEP team meetings throughout Student's sixteen month detainment at Sarah Anthony School for the purpose of identifying Student's unique educational needs, discussing appropriate supports and services, and ensuring Student's receipt of an educational benefit.

4. In August 2012, the Juvenile Court determined Student was incompetent to stand trial for the January 2012 incident because of his developmental immaturity, and stayed the criminal proceedings against him pending restoration of competency. The SDCOE is informed and believes and thereon alleges that the Juvenile Court indicated Student could be released from the KMJDF once the responsible placing agency was located.

///

COMPLAINT FOR RELIEF UNDER THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT

SF 650810v1

5. When a minor is deemed incompetent to stand trial, the juvenile court may make orders for services to assist him in attaining competency so that he is capable of standing trial. Cal. Welf. & Inst. Code § 709. During this period of time, the minor is to be placed somewhere where his needs for supervision and restoration of competency can be addressed. In M.P.'s case, his mother, Julia Pollock, advised the Juvenile Court that she could not care for M.P. at home as she was afraid for the safety of herself and others if he were to return home. It was then incumbent upon the Juvenile Court, the San Diego County Probation Department, HHSA, or others in the juvenile justice or social services systems to find a placement for M.P. that would meet his custodial and rehabilitation needs and address their public safety concerns.

6. Plaintiff is informed and believes and thereon alleges that instead of doing this, however, the Probation Department, the HHSA, and/or the Public Defender's Office advised the Juvenile Court that SDCOE should make and pay for a residential placement for M.P. upon his release from the KMJDF. Plaintiff is informed and believes and thereon alleges that the Probation Department, the HHSA, and/or the Public Defender's Office also referred Student to several residential placements, at least one of which accepted him in November 2012. Student remained detained by the Court.

7. In November 2012, Student requested a due process hearing through OAH challenging the appropriateness of the program SDCOE provided to him while detained in KMJDF and contending SDCOE was responsible for placing him in a residential program upon his release. 20 U.S.C. § 1415(f)(1)(A). Indeed, Plaintiff is informed and believes and thereon alleges that M.P.'s release from the KMJDF was made contingent upon SDCOE being found liable for making a residential placement for him and that the Public Defender's Office financed Student's legal case against the SDCOE for this purpose.

8. In a decision issued on April 16, 2013 OAH administrative law judge ("ALJ") Robert Helfand determined SDCOE denied Student a FAPE by failing to offer placement at a residential treatment center ("RTC") upon his release. This was despite his finding that SDCOE had provided Student with appropriate academic and mental health services during his detention.

///

9. The SDCOE contends this decision was wrong as a matter of law, and for that reason brings this action.

## PARTIES

10. Plaintiff SDCOE is a County Office of Education organized and existing under California law, with its principal offices in the city and county of San Diego, California.

11. M.P. is a 12-year-old student entering the sixth grade and eligible for special education and related services with a primary disability under the IDEA of Emotional Disturbance and a secondary disability of Other Health Impaired based on his diagnosis of fetal alcohol syndrome ("FAS"). M.P. has received special education services since October 2004, for the majority of the time in a general educational setting.

12. The SDCOE is informed and believes and thereon alleges that Defendant Julia Pollock ("Parent") is Student's adoptive mother. The SDCOE is informed and believes and thereon alleges that Parent resides El Cajon, San Diego County, California. Student currently lives and attends school at the Oak Grove Center for Education Treatment and the Arts ("Oak Grove"), in Murrieta, Riverside County, California. Student was placed at Oak Grove by SDCOE in May 2013 pursuant to the ALJ's order in OAH Case No. 2012110566. Student had already been accepted to live in the residential portion of Oak Grove, a licensed children's institution ("LCI"), based on a referral made by the Probation Department, HHSA, and/or the Public Defender's Office in or around November 2012.

## JURISDICTION AND VENUE

13. This court has jurisdiction over Plaintiff's claim for relief under the IDEA, pursuant to 20 U.S.C. sections 1415(i)(2)(A) and 1415(i)(3)(A), and pursuant to 28 U.S.C section 1331.

14. Venue is appropriate in this judicial district pursuant to 28 U.S.C. section 1391(b) as the incidents alleged herein occurred within the State of California and within the geographical boundaries of the Southern District of California, and Defendant, Julia Pollock, resides within that judicial district.

## CLAIM FOR RELIEF

## Appeal of an Administrative Determination Under the IDEA
## 20 U.S.C. Section 1415

15.   The SDCOE incorporates herein paragraphs 1 through 14, inclusive, as if fully set forth.

16.   The purpose of the IDEA is to ensure that children with disabilities have available to them a free, appropriate public education. 20 U.S.C. § 1400(d)(1)(A)-(C); Cal. Educ. Code § 56000. FAPE means special education and related services that are available to a student at no cost, that meet the state educational standards and conform to the student's IEP. 20 U.S.C. § 1401(9); Cal. Code Regs., tit. 5 § 3001, subd. (o).

17.   In the instant case, Student's 2012 IEP, developed by the IEP team at Sarah Anthony School, included four goals to address the following areas of educational need as identified by Student's IEP team: reading, writing, math and behavior. In addition, the IEP team developed and implemented a Behavior Support Plan ("BSP") to address Student's tendency to shut down and refuse to work when presented a non-preferred task. SDCOE also offered occupational therapy services for the purpose of improving Student's handwriting and his ability to maintain attention in the classroom. Student received mental health services from the KMJDF's Stabilization Treatment and Transition team ("STAT"), and required only minimal mental health services through his IEP.

18.   By Student's annual IEP meeting in March 2013, he had met his reading, math, and behavior goals and made significant progress towards his writing goal. Student made such great gains in reading that the IEP team determined reading was no longer an area of need for him as he was successfully working at or above grade level. Furthermore, Student's BSP was effective in teaching Student the appropriate strategies to manage his frustration at school as he was able to communicate his needs to an adult, take self-directed time-outs, and/or draw when facing a stressful situation or needing to re-focus on class work.

19.   The IEP team's findings in or around February 2013 that Student was receiving an educational benefit from his program at Sarah Anthony School is corroborated by the ALJ's determination that Student received appropriate mental health and academic services while

detained at KMJDF. Despite the ALJ's agreement that Student's educational program at Sarah Anthony School appropriately addressed his educational needs, the ALJ found SDCOE denied Student a FAPE by failing to offer a RTC placement for Student upon his release from Juvenile Hall. As a result, he ordered SDCOE to search for and place Student in an appropriate residential placement experienced in behavior modification and in treating children with FAS.

20.  The ALJ's decision that SDCOE erred in failing to consider or offer a RTC placement for Student is incorrect as a matter of law. The ALJ found that in order for SDCOE to make an appropriate offer of FAPE, the IEP team must specifically take into account Student's needs as a child with FAS. Relying on testimony by Student's expert witnesses, Dr. Brown and Dr. Rowe, the ALJ determined that Student's FAS causes attention issues, inability to control arousal levels which cause him to shut down and not complete academic tasks, and poor ability to read social cues leading to anxiety and memory problems. The IEP team had already appropriately identified his unique educational needs. It had recognized that Student displayed off task behaviors such as shutting down or refusing to do work, but these behaviors were not aggressive, nor were they unmanageable within the classroom. Through the implementation of Student's behavior goal and the strategies provided by his BSP, Student's teachers were capable of managing these behaviors in the classroom and delivering an educational benefit to Student. It was for this reason that after careful consideration of Student's unique educational needs, and all placement options, the IEP team determined Student's educational needs did not require placement in a RTC. In fact, before attending Sarah Anthony School, Student had been successfully served in his neighborhood school.

21.  Despite convincing evidence that Student's educational needs were appropriately addressed through the program developed by his IEP team, the ALJ faults the SDCOE for not considering the specific needs of Student's FAS, as opined by Student's experts, Dr. Brown and Dr. Rowe, who were also experts retained by the Juvenile Court in the competency proceeding. However, neither Dr. Brown nor Dr. Rowe's reports were made available to the SDCOE until they were presented as evidence at the above-referenced due process hearing, and much of the other information relied upon by these individuals and the Juvenile Court was similarly withheld.

1  Neither Dr. Brown nor Dr. Rowe ever attended an IEP meeting or shared their opinions with the
2  IEP team in any way. "An IEP is evaluated in light of the information available at the time it was
3  developed, it is not judged in hindsight". *Adams v. State of Oregon*, (9th Cir. 1999) 195 F. 3d
4  1141, 1449. Further, neither Dr. Rowe nor Dr. Brown are educators and both testified that their
5  reports were not prepared for the purpose of opining on an appropriate educational placement but
6  rather to determine Student's mental competency to stand trial for the January 2012 incident,
7  whether restoration of competency was possible and what treatment was needed for that purpose.
8     22.  "The analysis for determining whether a RTC placement is appropriate [in an IEP]
9  hinges on whether the placement is necessary for educational purposes or whether the placement
10 is in response to medical, social or emotional problems that is necessary quite apart from the
11 learning process." *Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings*, 903 F.2d 635, 643
12 (9th Cir. 1990). "A school district is not required to address all of the emotional or behavioral
13 problems a student may have, regardless of where and when these problems manifest." *San*
14 *Rafael Elem. Sch. Dist. v. California Special Educ. Hearing Office*, 482 F.Supp.2d 1152, 1161.
15 (N.D. Cal. 2007). "A district is required to address behavioral problems extraneous to the
16 academic setting only to the extent they affect the educational progress of the student." *Id.* at
17 1162. The ALJ's decision erroneously orders SDCOE to place Student in a RTC for behaviors
18 occurring outside of school and beyond the school day, and which had little to no impact on his
19 education.
20    23.  The ALJ's decision that Student requires a RTC placement contradicts his findings
21 that SDCOE provided an appropriate educational program and disregards the legal standard that
22 students be placed in the least restrictive environment appropriate to meet their educational needs.
23 20 U.S.C. § 1412(5). The ALJ credits Student's success at Sarah Anthony School to his BSP and
24 to staff providing individualized prompting to stay on task. These supports are capable of being
25 provided in a setting much less restrictive than a RTC.
26    24.  The ALJ's order for SDCOE to implement a RTC placement upon Student's
27 release from Juvenile Hall also disregards that SDCOE has no authority or obligation to place a
28 student once the student is released from Juvenile Hall and is therefore incorrect as a matter of

7

law for this reason as well. The California Education Code makes clear that the duty of a county office of education to provide a student FAPE is limited to the duration of his or her detention in juvenile hall and contemporaneous attendance at a juvenile court school. Cal. Educ. Code §§ 48645.1, 48645.2, 56150. In California, the determination of which local educational agency is responsible for providing a student with FAPE is controlled by the parents and/or the child's residency. Cal. Educ. Code §§ 48200, 48204. SDCOE provided Student with an appropriate education while he was detained at the KMJDF in accordance with its legal obligation to do so. Upon Student's release from Juvenile Hall, SDCOE ceased being the agency responsible for his education and as such, was not obligated to implement his educational program, regardless of the setting in which that program takes place. In fact, since Student had already been referred for placement to an LCI in another county by another public agency without any educational agencies' involvement, SDCOE had no obligation to make any placement for Student. See, Cal. Educ. Code §§ 48204(a)(1)(A), 56156.4, 56159.

26.  Based on the foregoing, the SDCOE is entitled to a determination that Student's educational needs do not necessitate placement in a RTC and that SDCOE was not the educational agency responsible for implementing Student's IEP once he was released from Juvenile Hall. It therefore could not be ordered to make a residential placement upon Student's release. SDCOE continues to investigate which agency, if any, was responsible for the costs of Student's education and residential placement upon his release from Juvenile Hall and will seek leave to amend this complaint to seek reimbursement for its costs and expenses from such additional parties when ascertained.

27.  To the extent it is required to do so, Plaintiff has exhausted its administrative remedies prior to bringing this action.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court:

1.  Receive the administrative record of this action, to be lodged forthwith;
2.  Receive additional evidence at the request of SDCOE;
3.  Grant SDCOE's request for relief by finding that Student's educational needs do

not necessitate placement in a RTC and SDCOE is not responsible for implementing a RTC placement for Student;

4. Award SDCOE reasonable attorneys' fees, expenses and costs; and

5. Provide all such other and further relief as the Court may deem just and proper.

DATED: July 15, 2013                    DANNIS WOLIVER KELLEY

By: _s/Sarah L. W. Sutherland_
AMY R. LEVINE
SARAH L. W. SUTHERLAND
AMY E. KOERS
Attorneys for Plaintiff
SAN DIEGO COUNTY OFFICE OF EDUCATION