FILED

14 JUN 20 PM 3:48

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COUNTY OFFICE OF EDUCATION,<br><br>Plaintiff,<br><br>vs.<br><br>JULIA POLLOCK, as parent on behalf of M.P., a minor; COUNTY OF SAN DIEGO; SAN DIEGO-IMPERIAL COUNTIES DEVELOPMENTAL SERVICES, INC., dba the SAN DIEGO REGIONAL CENTER FOR THE DEVELOPMENTALLY DISABLED,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS | CASE NO. 13-CV-1647-BEN (BLM)<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO DISMISS**<br><br>**(2) VACATING HEARING DECISION**<br><br>**(3) REMANDING APPEAL WITH INSTRUCTIONS TO DISMISS**<br><br>[Docket No. 78] |

Before this Court is a Motion to Dismiss Plaintiff San Diego County Office of Education's First, Second, and Third Claims for Relief, filed by Defendant and Counter-Claimant Julia Pollock (Pollock), as parent on behalf of M.P, a minor. (Docket No. 78). Pollock asks this Court to dismiss the three claims against her for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). For the reasons stated below, the Motion to Dismiss is **GRANTED**.

# BACKGROUND

This case arises out of a due process decision rendered by the California State Office of Administrative Hearings (OAH) under the Individuals with Disabilities Education Act (IDEA). M.P. is a minor who was arrested for murder and assault with a deadly weapon, and was detained at Juvenile Hall. (Am. Compl. ¶ 1). While in Juvenile Hall, SDCOE was responsible for providing M.P. with the free appropriate public education (FAPE) guaranteed by the IDEA. (*Id.* ¶ 4; 20 U.S.C. §§ 1400, *et seq.*; CAL. EDUC. CODE §§ 48645.1, 48645.2, 56150). M.P. was deemed incompetent to stand trial on August 21, 2012. (Am. Compl. ¶ 5). On November 16, 2012, M.P. filed for due process with OAH through his mother, Pollock.

The administrative law judge (ALJ) identified the issues as follows:

(1) Since January 16, 2012, has the [SD]COE deprived [M.P.] of a free appropriate public education (FAPE) both procedurally and substantively by failing to offer:
    (a) Appropriate mental health services including therapy and counseling;
    (b) Appropriate academic services when [SD]COE offered 240 minutes of academic instruction daily; and
    (c) Appropriate occupational therapy services?

(2) Since August 21, 2012, did the [SD]COE deny [M.P.] a FAPE both procedurally and substantively by failing to offer [M.P] an appropriate placement when it failed to offer him a placement at a residential treatment center (RTC), which was the least restrictive environment (LRE)?

(AR 2410). M.P. sought an order directing SDCOE to place him at an RTC, and awarding him compensatory education. (*Id.*)

The ALJ conducted hearings, and rendered a decision on April 16, 2013. (AR 2409-2458). In the decision, the ALJ ruled in M.P.'s favor as to issues 1(c) and 2. (AR 2457). Accordingly, the ALJ ordered that, within 60 days, SDCOE conduct an occupational therapy (OT) assessment, and convene an Individualized Education Program (IEP) meeting to determine M.P.'s present levels of performance, goals, and services in the area of occupational therapy. (*Id.*) The ALJ also ordered that SDCOE immediately begin a search for an appropriate RTC placement for M.P. which specializes in behavior modification and is experienced in treating children with fetal

13cv1647

1  alcohol syndrome disorders. (*Id.*) SDCOE was ordered to complete the search for the
2  residential placement, and to convene an IEP meeting to review and implement the
3  placement, within 45 days. (*Id.*)

4  SDCOE complied with the ALJ's orders. The OT assessment and IEP meeting
5  took place. (Pollock Decl. ¶ 3). SDCOE also provided the RTC placement. (*Id.*)

6  Pollock asserts that, on or about August 31, 2013, the home school district,
7  Cajon Valley Union School District (CVUSD), took over responsibility for conducting
8  IEP meetings and offering a FAPE for M.P. (*Id.* ¶ 4). Since August 31, CVUSD has
9  been the education agency attending IEP meetings and making offers of FAPE. (*Id.*)
10 SDCOE has not been present at, or involved in, IEP meetings since August 31. (*Id.*
11 ¶ 5).

12 On July 15, 2013, SDCOE filed a Complaint in which it sought judicial review
13 of the ALJ's decision. (Docket No. 1). A First Amended Complaint (FAC) was filed
14 on October 24, 2013. (Docket No. 9). The first claim for relief, against Pollock alone,
15 appeals the ALJ's decision under the IDEA. The second claim for relief seeks
16 declaratory relief against Pollock and the County of San Diego (County). The third
17 claim seeks declaratory relief against Pollock and the San Diego Regional Center for
18 the Developmentally Disabled. (Regional Center). A fourth claim asserts breach of
19 contract against Regional Center. The fifth claim demands contribution and
20 indemnification from the County and Regional Center.

21 Pollock filed a Motion to Dismiss for lack of subject matter jurisdiction on April
22 25, 2014. She asserts that the claims against her are moot, and that this Court lacks
23 jurisdiction to issue the requested declaratory relief against her. SDCOE timely
24 opposed on May 13, 2014. (Docket No. 80). Pollock filed a reply brief on May 20,
25 2014. (Docket No. 81). No other defendant has filed, or requested leave to file, any
26 briefing on this Motion. Pollock takes no position as to whether SDCOE's claims
27 should be dismissed as to other defendants if she prevails. (Mot. at 1 n. 1).
28 ///

**LEGAL STANDARD**

A.  Mootness

Article III of the United States Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies."  U.S. CONST. ART. III, § 2, cl. 1; *Doe v. Madison Sch. Dist. No. 321*, 177 F.3d 789, 797 (9th Cir. 1999) (citing *Pub. Util. Comm'n of the State of Cal. v. Fed. Energy Reg. Comm'n*, 100 F.3d 1451, 1458 (9th Cir. 1996)).  A party must maintain a live controversy through all stages of the litigation process.  *Seven Words LLC v. Network Solutions*, 260 F.3d 1089, 1095 (9th Cir. 2001); *Doe*, 177 F.3d at 797.

When the issues presented in an action are no longer "live" or the parties lack a legally cognizable interest in the outcome, the action is considered moot. *Ruiz v. City of Santa Maria*, 160 F.3d 543, 549 (9th Cir. 1998) (citations omitted).  The "basic question" in determining mootness is "whether there is a present controversy as to which effective relief can be granted." *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244 (9th Cir. 1988) (citation omitted).  Where the claim is moot, courts no longer have jurisdiction to resolve the underlying dispute. *Doe*, 177 F.3d at 797-798 (citations omitted).

As mootness pertains to a federal court's subject matter jurisdiction under Article III, the issue is properly raised in a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); FED. R. CIV. P. 12(b)(1).  The party asserting mootness bears the heavy burden of establishing that there is no effective relief that the court can provide. *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006) (citations omitted).   Rule 12(b)(1) attacks on jurisdiction can be either facial, confining the inquiry to allegations in the complaint, or factual, permitting the court to look beyond the complaint. *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *White*, 227 F.3d at 1242).

Where a party does not allege an injury that a court ordinarily has the power to

1    remedy, a court may have jurisdiction if one of several recognized exceptions to the
2    mootness doctrine applies. *Doe*, 177 F.3d at 798. As will be discussed, there is no
3    longer a present "live" controversy between SDCOE and Pollock, and unless an
4    exception applies, this part of the case is moot. Two exceptions have been raised by
5    SDCOE.

6         "A case otherwise moot will still be heard if it presents an issue that is capable
7    of repetition while evading review." *Pub. Util.*, 100 F.3d at 1459 (citing *Honig v. Doe*,
8    484 U.S. 305, 318-20 (1988); *Roe v. Wade*, 410 U.S. 113, 125 (1973)). This exception
9    applies in "exceptional circumstances." *Id.* (citation omitted). In order to fit within the
10   exception, the controversy must satisfy two requirements: "(1) the challenged action
11   was in its duration too short to be fully litigated prior to its cessation or expiration, and
12   (2) there was a reasonable expectation that the same complaining party would be
13   subjected to the same action again." *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 482
14   (1982)).

15        A second exception to the mootness doctrine exists where a party would suffer
16   "collateral legal consequences if the actions being appealed were allowed to stand."
17   *Pub. Util.*, 100 F.3d at 1460; *see also City of Colton v. Am. Promotional Events, Inc.-*
18   *West*, 614 F.3d 998, 1006 (9th Cir. 2010) (in the appellate context, appeal not moot
19   where "a party can demonstrate that a lower court's decision, if allowed to stand, may
20   have collateral consequences adverse to its interests.") (citation omitted); *Dep't of*
21   *Educ., State of Haw. v. Rodarte ex rel. Chavez*, 127 F. Supp. 2d 1103, 1113-1114 (D.
22   Haw. 2000) (applying collateral consequences analysis to a mootness challenge to an
23   IDEA appeal). The exception has been applied where the primary injury has passed,
24   but there remains a "substantial controversy, between parties having adverse legal
25   interests, of sufficient immediacy and reality to warrant the issuance of a declaratory
26   judgment." *E.E.O.C. v. Fed. Exp. Corp.*, 558 F.3d 842, 847 (9th Cir. 2008) (quoting
27   *In re Burrell*, 415 F.3d 994, 999 (9th Cir. 2005)) (exception applied after party
28   complied with administrative subpoena for investigation whose validity was

1  challenged).

2    The collateral consequences exception does not apply every time there is a "mere

3  possibility of continuing present adverse effects." *Pub. Util*, 100 F.3d at 1460 (citation

4  and internal quotation marks omitted). The collateral consequences are required to be

5  *legal*. *Id.* at 1461 (citation omitted). The doctrine is most commonly applied in habeas

6  corpus proceedings. *Id.* at 1460. Indeed, application of this exception outside of

7  criminal appeals and habeas petitions is "relatively rare." *Samsung Elecs. Co., Ltd. v.*

8  *Rambus, Inc.*, 398 F. Supp. 2d 470, 477 (E.D. Va. 2005). The Ninth Circuit has applied

9  the doctrine to conclude that an appeal was not moot where a reversal would put the

10  party "on better footing with regard to limitations defenses, which 'is a collateral

11  consequence of the type that suffices to defuse a claim of mootness.'" *City of Colton*,

12  614 F.3d at 1006 (quoting *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 89 (1st Cir.

13  2008)).

14  B. Declaratory Relief

15    The Declaratory Judgment Act (DJA) authorizes a court of the United States to

16  grant declaratory relief where there is "a case of actual controversy within its

17  jurisdiction," subject to certain exceptions. 28 U.S.C. § 2201(a). The court may

18  "declare the rights and other legal relations of any interested party seeking such

19  declaration, whether or not further relief is or could be sought." *Id.*

20    The purpose of declaratory relief is to "afford an added remedy to one who is

21  uncertain of his rights and who desires an early adjudication thereof without having to

22  wait until his adversary should decide to bring suit, and to act at his peril in the

23  interim." *Shell Oil Co. v. Frusetta*, 290 F.2d 689, 692 (9th Cir. 1961). Declaratory

24  relief may be sought by "any interested party" involving an actual controversy that "has

25  not yet reached a stage at which either party may seek a coercive remedy and in cases

26  where a party who could sue for coercive relief has not yet done so." *Seattle Audubon*

27  *Soc. v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) (citation omitted).

28    The DJA does not extend new jurisdiction to federal courts. *Skelly Oil Co. v.*

1   *Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); *Lear Siegler, Inc. v. Adkins*, 330
2   F.2d 595, 599 (9th Cir. 1964). Instead, the DJA makes a new remedy available where
3   jurisdiction otherwise exists. *Skelly Oil*, 339 U.S. at 671; *Lear Siegler*, 330 F.2d at
4   599.

5       Jurisdiction to issue a declaratory judgment exists only where there is an "actual
6   controversy." *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994) (citation
7   omitted). The Ninth Circuit has held that this requirement is identical to the "case or
8   controversy" requirement in Article III. *Id.* (citation omitted). Accordingly, before
9   issuing declaratory relief, a court must determine whether there is an "actual
10  controversy" within its jurisdiction. *Id.* If a case or controversy exists, a court has
11  discretion in deciding whether or not to entertain declaratory judgments. *Id.* at 143-44
12  (noting that the statute states that courts "may" issue declaratory relief). A declaratory
13  judgment action is justiciable if "there is a substantial controversy, between parties
14  having adverse legal interests, of sufficient immediacy and reality to warrant the
15  issuance of a declaratory judgment." *Seattle Audubon Soc.*, 80 F.3d at 1405 (quoting
16  *Nat'l Basketball Ass'n v. SDC Basketball Club*, 815 F.2d 562, 565 (9th Cir. 1987)).

17      In general, any non-frivolous assertion of a federal claim suffices to establish
18  federal question jurisdiction, even if that claim is later dismissed on the merits. *Cement*
19  *Masons Health & Welfare Trust Fund for N. Cal. v. Stone*, 197 F.3d 1003, 1008 (9th
20  Cir. 1999) (discussing *Bell v. Hood*, 327 U.S. 678, 682 (1946)). The Ninth Circuit has
21  found that where a plaintiff made a claim for past costs under a federal statute, which
22  was later dismissed, the court nonetheless had jurisdiction over a nonfrivolous claim
23  for declaratory relief as to future costs. *City of Colton*, 614 F.3d at 1004, 1006.

**DISCUSSION**

24
25  A. First Cause of Action - IDEA Appeal

26      Pollock asserts that SDCOE can no longer obtain effective relief by appealing
27  the ALJ's decision, and therefore the claims against her are moot. In summary, she
28  asserts that the relief awarded by OAH has already been given to M.P., and cannot be

1  given back. (Mot. at 7). Namely, the occupational therapy assessment has taken place,
2  the IEP meeting was conducted, and the RTC placement was implemented.  (*Id.*)
3  Pollock further asserts that a mere reversal of the OAH decision is not "effective
4  relief." (*Id.*)

5        SDCOE does not appear to dispute that it cannot receive effective relief for these
6  specific injuries.  Instead, SDCOE asserts that the "capable of repetition, yet evading
7  review" and "collateral legal consequences" exceptions to the mootness doctrine apply.
8  (Opp'n at 1).  SDCOE asserts that failure to review this lawsuit would strip SDCOE
9  of any ability to challenge the misapplication of the law, and argues that Pollock's
10 motion "ignores the very live controversy between SDCOE and the other defendants."
11 (*Id.*)

12       i. Capable of Repetition, Yet Evading Review

13       SDCOE argues that the relevant statutes and regulations render this situation
14 capable of repetition, yet evading review.

15             a. Action Too Short in Duration to be Fully Litigated

16       As discussed above, in order to fit the exception, the controversy must be "in its
17 duration too short to be fully litigation prior to its cessation or expiration." *Pub. Util.*,
18 100 F.3d at 1459.  SDCOE argues that the relevant statutes and regulations create such
19 a situation here.

20       The federal IDEA allows a "party aggrieved by the findings and decision" of an
21 IDEA administrative due process hearing to bring a civil action in state or federal court.
22 20 U.S.C. § 1415(i)(2)(A).  Such an action must be brought within 90 days of receipt
23 of the decision.  20 U.S.C. § 1415(i)(2)(B) (requiring a party bring an action within the
24 time allowed by a state, if the state has an explicit time limitation for actions under the
25 subchapter); CAL. EDUC. CODE § 56505(k) ("An appeal shall be made within 90 days
26 of receipt of the hearing decision.").

27       SDCOE points to the "stay put" requirements which "ensure that the child is not
28 treated as a ping-pong ball, ricocheting between placements with each new ruling in

1   the dispute between the parents and school." *Ashland Sch. Dist. v. Parents of Student*
2   *E.H.*, 583 F. Supp. 2d 1220, 1228-29 (D. Or. 2008).   During the pendency of
3   administrative or judicial IDEA proceedings, the child remains in the then-current
4   educational placement, unless the State or local agency and the parents of the child
5   otherwise agree.   20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a).   However, when a
6   hearing officer in a due process hearing agrees that a change of placement is
7   appropriate, that placement is treated as such an agreement between the State and the
8   parents.   34 C.F.R. § 300.518(d).   SDCOE asserts that it was therefore required to
9   implement the decision.   (Opp'n at 3).   SDCOE cites to *Ashland School District. v.*
10  *Parents of Student E.H.*, in which an Oregon district court stated that after an
11  administrative proceeding resulted in a determination that the proper placement is a
12  private facility, the district was required to fund the placement from the date of the
13  decision and continuing throughout the pendency of the litigation. 583 F. Supp. 2d at
14  1229.

15       SDCOE contends that, under Pollock's interpretation of the law, complying with
16  the "stay put" provisions would read the right to judicial review out of the law. (Opp'n
17  at 3).   SDCOE was ordered to place M.P. within 45 days.   SDCOE contends that the
18  "stay put" requirements prevent them from delaying the placement in order to avoid
19  mootness and seek judicial review.   (*Id.* at 4).[1]   That is to say, the statutory and
20  regulatory scheme requires SDCOE to immediately take the actions which, according
21  to Pollock, render the case moot.

22       Pollock contends that the exception does not apply because the action was "fully
23  litigated" before the OAH. (Mot. at 8).   She provides no authority to suggest that the
24  administrative hearing that produced the decision defeats the application of the
25  exception. However, the Ninth Circuit has applied the exception where judicial review

26  
_____

27       [1]To the extent SDCOE sought to suggest that this case is not moot because the
     short window of review before certain IDEA cases become moot is in tension with the
28  statute, it cites to no other exceptions to mootness beyond the two discussed in this
     Order.  This Court therefore considers this argument with respect to the exceptions
     asserted.

of an administrative decision would be difficult to obtain before the underlying activity ended. *Alaska Fish and Wildlife Fed'n and Outdoor Council, Inc. v. Dunkle*, 829 F.2d 933, 939 (9th Cir. 1987) (apply exception in reviewing one-year agreements where it was "difficult to obtain judicial review" during duration of agreements). Indeed, an exception aimed at cases "evading review" can hardly be inapplicable on the grounds that review is not required, particularly where review of the decision is explicitly authorized. The OAH hearing rendered a decision after the parties argued the merits, and Congress explicitly authorized a right to judicial review of that decision. 20 U.S.C. § 1415(i).

It is apparent that such a short window prevents SDCOE from obtaining judicial review of the order before it is required to comply with the order. Pollock does not dispute that SDCOE cannot delay implementing the placement to preserve judicial review. It is also apparent that judicial review could not be completed in the time before the placement is made. Even if a party did not use the full 90 days provided by statute, filed an appeal immediately upon receiving the decision, and delayed implementing the decision until the final day allowed by the ALJ's order, proper review of complex legal issues could not be completed before placement.

Pollock responds to SDCOE's arguments by contending that judicial review is not evaded under the circumstances of this case. Pollock argues that SDCOE's "true claims" are against the County and Regional Center, and that SDCOE has other avenues to obtain judicial review of those legal issues. (Reply at 1, 3). Specifically, SDCOE's Amended Complaint also seeks declaratory relief and damages from the County and Regional Center based upon its argument that these entities were required to place M.P., and not SDCOE. Pollock points to a footnote in SDCOE's Opposition Brief in which it concedes that "It is possible that the Court will not need to reach the IDEA appeal once it considers whether the County or the Regional Center were obligated to residential [sic] place M.P. before or instead of SDCOE." (Reply at 3 n.2); (Opp'n at 10 n. 5). The footnote, placed in SDCOE's argument that the IDEA appeal

has collateral consequences that constitute a separate exception to mootness, then contends that the IDEA should not be dismissed because those issues have not yet been resolved. (Opp'n at 10 n. 5). However, the Court notes that the use of the word "possible," indicating that SDCOE does not clearly concede that the IDEA appeal will not need to be determined to resolve the other issues.

Pollock points to *Vegas Diamond Props., LLC v. FDIC*, 669 F.3d 933 (9th Cir. 2012). The Ninth Circuit dismissed as moot an appeal of an order granting the dissolution of a temporary restraining order, where the properties in question were sold during the pendency of appeal. *Id.* at 934. The *Vegas Diamond* Court held that the conduct did not evade review where the plaintiffs were allowed to bring damages actions for the alleged unlawful conduct. *Id.* at 937. The claims did not evade review, even though the plaintiffs predicted that the money damages they might recover would be inadequate. *Id.*

The question is thus whether the conduct complained of actually would "evade review" if this Court does not hear the IDEA appeal. SDCOE emphasizes that it not only seeks a reversal of the order with respect to M.P., it seek a ruling on "its obligations to provide special education and related services to disabled children generally when they enter into its jurisdiction through confinement in Juvenile Hall." (Opp'n at 7). SDCOE claims, among other things, that the ALJ erred as a matter of California law. (*Id.*) SDCOE asserts that because it asserts an error of law, it does not matter that the factual circumstances may be different in the future. (*Id.* at 7-8). In sum, it is clear that the potentially-recurring issue is a general legal question. Critically, it is not at all clear that this question can only be resolved through this IDEA appeal. Plaintiff seeks contribution and indemnification from the County and Regional Center in other claims, allowing SDCOE to raise many of its legal arguments. There is no indication that an IDEA appeal is the only vehicle for SDCOE to obtain an authoritative interpretation of a potentially-recurring legal issue. However, SDCOE has not directly briefed this issue before this Court. Regardless of the outcome on

1  evading review, the application of this exception requires that both prongs of the test
2  be satisfied.  As this Court finds that this exception is inapplicable based on its failure
3  to meet the requirements of the second prong, this Court will not unnecessarily delve
4  into SDCOE's possible legal strategies with regard to the first prong.

5       b.  Reasonable Expectation of Complaining Party of Being Subjected to
6            Same Action

7       In order to qualify for the exception, there must also be a reasonable expectation
8  that the complaining party will be subjected to the "same action" again. *Pub. Util.*, 100
9  F.3d at 1459.

10      1.  Reasonable Expectation that SDCOE Will Face this Issue with
11           Respect to M.P.

12      Pollock asserts that there is no reasonable expectation of repetition, as M.P.
13 would again need to be detained in Juvenile Hall, and would then again need to be
14 placed in an RTC from Juvenile Hall.  (Mot. at 8).  Pollock claims that this is too
15 speculative.  (*Id.*)  She cites to the Supreme Court's statement that: "for purposes of
16 assessing the likelihood that state authorities will reinflict a given injury, we generally
17 have been unwilling to assume that the party seeking relief will repeat the type of
18 misconduct that would once again place him or her at risk of that injury."  (*Id.*)
19 (quoting *Honig*, 484 U.S. at 320).  Although the procedural posture of this case differs
20 from the cases discussed in *Honig*, there are no special reasons for this Court to
21 conclude that M.P. will commit a new offense that will lead him to be placed in
22 Juvenile Hall, and then require an RTC placement.  SDCOE does not present argument
23 that there is a reasonable expectation that he will be detained in Juvenile Hall for an
24 alleged new crime.

25      However, SDCOE points out that the original charges against M.P. have not
26 been dismissed.  (Opp'n at 6).  SDCOE argues that M.P. could return to Juvenile Hall
27 once his case is active again.  (*Id.*)  This is insufficient.  Although M.P.'s return at some
28 point because of the pending case is certainly possible, a recurrence of this issue would

1   require that M.P. also need to be released from Juvenile Hall and then placed again in

2   an RTC. SDCOE argues only that M.P. may return, and does not suggest any scenarios

3   in which a new placement might be required.   In addition, SDCOE's specific

4   contentions in this case relate to its argument that M.P.'s need for an RTC was related

5   to other factors, such as the threat to public safety and the need to restore him to

6   competency. A recurrence would seemingly require M.P. to be re-detained in Juvenile

7   Hall, then removed from Juvenile Hall again under circumstances where a RTC may

8   be sought for non-educational reasons.  Although it is possible that a situation could

9   arise wherein M.P. returns to Juvenile Hall, there is no reasonable expectation that he

10  will require another residential placement raising similar legal issues.

11                    2.  Reasonable Expectation that SDCOE Will Be Subject to the

12                         Same Action by Another Student

13          SDCOE asserts that what matters is that the complaining party will be subject

14  to the same issue.  SDCOE claims that the "real issue is whether there is  a reasonable

15  expectation that SDCOE will be aggrieved by a similar application of the IDEA."

16  (Opp'n at 6).   SDCOE argues that this Court may correct the announcement of an

17  incorrect legal rule, and that changes in the factual posture of future cases involving

18  other students would not significantly alter the legal issue. (Opp'n at 7-8 (citing *Deer*

19  *Valley Unif. Sch. Dist. v. L.P. ex rel. Schripsema*, 942 F. Supp. 2d 880, 888-89 (D.

20  Ariz. 2013) (reversing finding of a procedural violation in case where no mootness

21  issue was raised))).

22          Pollock asserts that this exception requires that the same parties be involved, and

23  the chance of recurrence of this issue with unknown future special education students

24  does not qualify. Pollock argues that there is no reason to force M.P. to step into the

25  shoes of these potential future students and defend disputes that have not been asserted.

26  (Reply at 1).

27          The test requires that the same complaining party be subject to the "same action."

28  *Pub. Util.*, 100 F.3d at 1459.   The disagreement between SDCOE and Pollock

1    essentially amounts to a disagreement about whether the "same action" must be carried
2    out by the same party. In many of the cases addressing this exception, the defendant
3    has a policy or practice that the plaintiff seeks to challenge. Accordingly, there is a
4    reasonable expectation that the same action will be taken by the defendant in question.
5    In this case, the defendant in question, Pollock, is likely to be a one-time actor, but is
6    being supported by a repeat player, the County. That is to say, the general issue of
7    "who pays" is capable of repetition, and the same party is likely to ultimately be behind
8    it, but the actual defendant here is unlikely to be involved. The actual defendant in this
9    matter therefore seeks to be dismissed, leaving the repeat players to litigate.

10          In support of its argument that it is sufficient that SDCOE will be aggrieved by
11   the same issue, SDCOE primarily discusses D.C. Circuit law. SDCOE discusses
12   *Jenkins v. Squillacote*, 935 F.2d 303 (D.C. Cir. 1991), in which a school district and
13   a child's parents disagreed about the proper placement of the child. *Id.* at 305. An ALJ
14   twice rejected the placement notice provided by the school district as insufficient. *Id.*
15   at 305-06. After the second rejection, the ALJ ordered placement at the parents'
16   preferred school because the school year was imminent. *Id.* at 306. The district sought
17   review, challenging the ALJ's determinations about the sufficiency of the notices. *Id.*
18   The parents filed a motion to dismiss. *Id.* The district court took the matter under
19   advisement for 10 months, then found that the case was moot because the school year
20   had passed. *Id.* On appeal, the D.C. Circuit determined that the case fit the exception
21   for cases that are capable of repetition, yet evading review. *Id.* at 307-08. The D.C.
22   Circuit first concluded that a one-year placement order was too short to be fully
23   litigated prior to expiration. *Id.* at 307. The *Jenkins* Court found that there was a
24   reasonable expectation that the district could be aggrieved by a similar application of
25   the notice requirement. *Id.* at 308. Although the court noted that the parties agreed that
26   this was a recurring problem, the court also specifically noted that it was likely to be
27   a recurring legal question "with respect to the District's educational plans for the very
28   pupil whose parents are now before this Court." *Id.* It therefore concluded that there

1    was a reasonable expectation that the district would attempt to place the same child in

2    another school, and confront the same notice problem. *Id.   Jenkins* is therefore

3    distinguishable.

4    SDCOE points to *District of Columbia v. Doe*, 611 F.3d 888 (D.C. Cir. 2010),

5    in which the D.C. Circuit discussed *Jenkins* in a manner that emphasized that the

6    *Jenkins* Court had considered the impact of the issue in cases involving other children,

7    and applied the exception to a case in which the district was likely to be aggrieved by

8    a similar application of the IDEA. *Id.* at 895.  To the extent that D.C. Circuit case law

9    interprets the second prong of the exception to allow review where there is a reasonable

10   expectation that the conduct is likely to occur with respect to other parties not present,

11   but not to the defendant in question, such a conclusion is not binding precedent on this

12   Court. The *Doe* court extended the *Jenkins* precedent with little explanation regarding

13   the second prong and cited to authority where the party seeking review faced a problem

14   that was capable of repetition by the particular defendant. *Id.* at 395; *see Honig*, 484

15   U.S. at 322-23 (applying exception to student's claims where review was only sought

16   with regard to an injunction against the state defendant and "respondent would be faced

17   with a real and substantial threat of such action in any California school district in

18   which he enrolled."); *DeVries by DeBlaay v. Spillane*, 853 F.2d 264, 268 (4th Cir.

19   1988) (applying exception where student's IEP had been superseded by a new IEP).

20   This Court determines that the exception does not apply in the case at hand, where

21   future instances of the action capable of repetition are unlikely to involve the defendant

22   being forced to litigate.

23   In *Honig v. Doe*, the Supreme Court discussed how certain cases:

24   differ from the body of our mootness jurisprudence *not* in accepting less
     than a probability that the issue will recur, in a manner evading review,
25   between the same parties; but in dispensing with the same-party
     requirement entirely, focusing instead upon the great likelihood that the
26   issue will recur *between the defendant and the other members of the*
     *public at large* without ever reaching us.
27

28   484 U.S. at 335-36 (emphasis in original).   That is to say, the Supreme Court

1   acknowledged the existence of at least some cases which deviate from the "same-party
2   requirement" where the problem might recur with the same defendant.  The *Honig*
3   Court then noted that even these cases are arguably limited to their facts.  *Id.* at 336.
4   An underlying assumption of the jurisprudence appears to be that the party accused of
5   some unlawful activity will do so in the future.  At least one district court in this circuit
6   has found that the exception is "clearly inapplicable" in an IDEA case where the
7   student's graduation precluded the repetition of another controversy with respect to that
8   student's rights.  *Rodarte*, 127 F. Supp. 2d at 1113 (refusing to review the award of
9   compensatory education).

10   Such an interpretation comports with the fundamental values and assumptions
11   of American law.  In claiming an exception to the mootness doctrine, a party is asking
12   the court to force a party which is not engaged in a live controversy, to undergo the
13   substantial stresses and burdens of litigation, because it benefits the party asserting the
14   exception.  The equities of compelling a party who is alleged to have engaged in
15   unlawful activity and who may do so again, vary significantly from the equities of
16   imposing litigation on a party who poses no such threat.

17   In the case at hand, SDCOE may well wish to pursue its appeal and is apparently
18   willing to undergo the hassle and expense of litigation, but Pollock has not so
19   volunteered.  SDCOE cannot simply select a student with whom it no longer has a
20   dispute, and with whom it may never again have a dispute, and force him or her to
21   represent students who may someday be in the situation that the student was once in.
22   As there is no reasonable expectation that the situation will arise again as to Pollock
23   and M.P., there is no concern that Pollock or M.P. will evade review in the future
24   unless compelled to litigate.

25   This conclusion is supported by core concerns underlying Article III
26   requirements.  As SDCOE appears to concede, Pollock cannot give back any of the
27   relief granted by the ALJ.  The only possible impact on Pollock is the purely
28   speculative possibility that if SDCOE wins on the legal issue and is able to obtain

damages, the other defendants may seek contribution from Pollock. Without a non-speculative likelihood that the case will repeat with these parties, it is difficult to see how Pollock would be motivated to adequately litigate the serious and complex issues in this matter. Where the party being forced to litigate without a live controversy is a party expected to conduct the activity in question in the future, the party has incentive to litigate the merits vigorously. By contrast, a party who is not expected to be in the situation in the future has no such incentive. SDCOE raises potentially complex questions about state and federal law whose resolution has the potential to significantly impact the way the parties handle the expensive and delicate problem of children in M.P.'s past situation. This Court can hardly expect such questions to be fully and vigorously litigated by a party that may not feel any effects. The serious consequences of forcing an unmotivated party, such as Pollock, to defend an action are illuminated by the considerations underlying standing doctrines. The Ninth Circuit has recognized that "Nonparties to litigation may suffer directly from poorly considered decisions reached in actions brought by parties who may not have adequate incentives or motives to effectively present a legal challenge, particularly in a case such as this that involves important public rights." *Townley v. Miller*, 722 F.3d 1128, 1135 (9th Cir. 2013); *see also Baker v. Carr*, 369 U.S. 186, 204 (1962) (describing the question of standing as "Have the appellants alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions?"); *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396-397 (1980) (discussing the importance of the "personal stake" aspect of mootness in assuring that federal courts are presented with disputes they are capable of resolving).

### c. Conclusion

Although SDCOE may well encounter the same general funding question with respect to other children, it is not likely to face this question with respect to M.P. As such, the requirements of the second prong of the exception are not met, and the

1   exception does not apply.  This Court will not force Pollock to litigate a case in which
2   neither she nor her child have an adequate personal stake, and will not leave important
3   and complex questions to be defended by a party with little incentive to do so.

4           ii. Collateral Legal Consequences

5           SDCOE also asserts that this Court should find that the collateral legal
6   consequences of the appeal create an exception to the mootness doctrine.  SDCOE
7   argues that resolution of the appeal will affect the outcome of SDCOE's claims against
8   the County and Regional Center, as well as the defenses those parties have asserted
9   against SDCOE.  SDCOE points to the fact that the defendants have sought to persuade
10  this Court to resolve the IDEA appeal first, on the grounds that the resolution of the
11  appeal is dispositive of the other claims.  (Opp'n at 11; Pl. Ex. A at 3 ("dispositive");
12  Pl. Ex. B at 3 ("remaining claims are at least in part dependent upon the Court's
13  findings on the first cause of action.")).

14          a.  Contribution Claims

15          SDCOE argues that if it successfully wins a reversal of the the OAH decision,
16  the outcome will affect its claims for contribution against the County and Regional
17  Center.  SDCOE argues that the ALJ improperly failed to consider whether the
18  placement was required for "medical, social, or emotional problems that is necessary
19  quite apart from the learning process."  (Opp'n at 9 (quoting *Clovis Unif. Sch. Dist. v.*
20  *Cal. Off. of Admin. Hrgs.*, 903 F.2d 635, 643 (9th Cir. 1990))).  If SDCOE prevails, it
21  asserts that the County and Regional Center could be responsible for at least some costs
22  under California law.  (*Id.* at 9-10).  This is to say, if SDCOE prevails on the appeal,
23  it argues it will be able to seek contribution.

24          SDCOE provides no authority to support an argument that it can force a party
25  to litigate in order to allow SDCOE to more effectively litigate separate claims against
26  another party.  The collateral consequences exception has been described as applying
27  to "situations where a petitioner would suffer collateral legal consequences if the
28  actions being appealed were allowed to stand."  *Pub. Util.*, 100 F.3d at 1460; *see also*

1   *Koppers Indus., Inc. v. U.S. E.P.A.*, 902 F.2d 756, 758 (9th Cir. 1990) (exception did
2   not apply where there were no collateral continuing legal disputes to which the
3   execution of the administrative warrant directed to the plaintiff had given rise, and
4   noting the lack of citations or enforcement actions against the plaintiff under
5   CERCLA).  This is readily seen in the habeas corpus context, where the petitioner
6   suffers the legal consequences of conviction.

7   With respect to the contribution claims, the legal consequences claimed by
8   SDCOE appear to be, not that SDCOE is subject to some legal impediment or
9   litigation, but that SDCOE will be impeded in conducting litigation that it has initiated.
10  SDCOE does cite statute of limitations cases in which the moot case affected separate
11  litigation.  In *City of Colton*, the plaintiff faced a potential statute of limitations bar
12  with respect to certain defendants, and the Ninth Circuit found that a reversal might put
13  the plaintiff on a better footing with regard to the limitations defenses.  614 F.3d at
14  1006.  The *City of Colton* case quoted from a First Circuit decision, *Connectu LLC v.
15  Zuckerberg. Id.* (quoting 522 F.3d at 81).  SDCOE cites to *Connectu* as an application
16  of the exception where the statute of limitations defenses were raised by other
17  defendants.  (Opp'n at 8 (citing 522 F.3d at 88)).  At the outset, the Ninth Circuit did
18  not adopt the entire holding of *Connectu* in *City of Colton*, and the facts of *City of
19  Colton* involved the same parties.  In the case at hand, none of the adverse legal
20  consequences come from Pollock, and the decision does not affect any non-speculative
21  future administrative or judicial proceedings initiated by Pollock.  Additionally, the
22  collateral consequences at issue are markedly different.  A statute of limitations defense
23  may preclude a party from bringing claims at all.  There is no indication here that
24  SDCOE will not be able to pursue contribution, declaratory relief, or other possible
25  means of obtaining the relief that it seeks, either in this court or another.  SDCOE did
26  not present argument that Pollock needs to be involved in order to litigate
27  declaratory relief claims against the other defendants.  Finally, adopting SDCOE's
28  argument would allow a plaintiff to force an uninterested party to litigate simply to help

1  the plaintiff better pursue separate cases. This practice would be inconsistent with the

2  case or controversy requirement imposed by Article III. *See Samsung Elecs.*, 398 F.

3  Supp. 2d at 478 (declining to apply exception where it would convert narrow exception

4  into a full scale breach of Article III case or controversy requirement). Furthermore,

5  Pollock correctly points out that parties may attempt to defeat mootness simply by

6  bringing additional claims. SDCOE asks this Court to radically extend the application

7  of this narrow exception to encompass new situations involving important

8  considerations not present in the cases cited by SDCOE. This Court declines to do so.

9       Furthermore, the other adverse effect cited by SDCOE with respect to

10  contribution is that it will be forced to pay for future placements of other students in

11  RTCs. Although such a financial consequence would be real and negative, it is not

12  apparent that such consequences would be "legal." *See Pub. Util.*, 100 F.3d 1460-61

13  (no adverse legal consequences where failure to decide issues would force discounting

14  of natural gas rates and lost revenues).

15            b. Declaratory Relief Claims

16       SDCOE also asserts that the IDEA appeal has legal consequences for the

17  declaratory relief claims. This argument fails for similar reasons. SDCOE itself

18  acknowledges that the declaratory relief claims will not necessarily fail if the appeal

19  is dismissed. (Opp'n at 13-14). On the question of legal consequences for the

20  declaratory relief claims, SDCOE argues the importance of the claims, but does not

21  explain how a reversal of the appeal is necessary to them. In its discussion, SDCOE

22  discusses the fact that it will face future disagreements with the County and Regional

23  Center, but not Pollock.

24       SDCOE also argues that its efforts to seek declaratory relief would be

25  collaterally affected if the OAH decision were allowed to stand without review. (*Id.*

26  at 11). However, this concern is addressed below.

27  ///

28  ///

### c. Financial Consequences

SDCOE also points to financial consequences for all defendants. Although SDCOE admits that this does not directly affect SDCOE, SDCOE points out that reversal of the OAH decision could lead the County to seek reimbursement from Pollock. (*Id.* at 12). However, these financial consequences are entirely speculative and depend on an intervening decision by the County which it may never make. Even if future efforts to collect from Pollock may be termed collateral legal consequences, they are far too speculative. *See Koppers Indus.*, 902 F.2d at 758 (denying application of collateral legal exception based on speculative contingency that issues may arise).

### d. Affirmative Defenses and Counterclaims

SDCOE points to the fact that it faces affirmative defenses and counterclaims asserted by the other defendants based upon the administrative decision at issue in the appeal. (Opp'n at 10). Specifically, SDCOE argues that both the County and Regional Center assert as affirmative defenses that (1) it acted in good faith and/or in reliance on the OAH decision, and (2) that SDCOE's claims are barred by res judicata and/or collateral estoppel based on the OAH decision. (Docket No. 18 ¶¶ 43, 47, 48; Docket No. 24 ¶¶ 49, 53, 54). Regional Center's counterclaim seeks a determination of the merits of the OAH decision. (Docket No. 30 ¶ 6, Prayer for Relief). SDCOE points to the fact that both parties sought a stay of discovery while the IDEA appeal was litigated, on the basis that resolving the IDEA claim was "dispositive" of the claims against them. (Opp'n at 11 (citations omitted)).

Normally, these claims might plausibly be construed as adverse collateral legal consequences. However, this situation has been addressed by courts, and resolved in a different fashion.

The Supreme Court and the Ninth Circuit have recognized that collateral estoppel has legal consequences from which a party may continue to suffer harm after a claim has been rendered moot. *In re Burrell*, 415 F.3d at 999 (citation omitted). The Supreme Court has stated that "[a] party who seeks review of the merits of an adverse

13cv1647

1   ruling, but is frustrated by the vagaries of circumstance, ought not in fairness be forced
2   to acquiesce in the judgment." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513
3   U.S. 18, 25 (1994)(citation omitted). The Supreme Court has therefore recognized a
4   limited practice of vacating lower court decisions and remanding with directions to
5   dismiss, in situations where the party seeking relief from the judgment below did not
6   cause the mootness by voluntary action. *See id.* at 22-25; *In re Burrell*, 415 F.3d at
7   999-1000.

8          This practice indicates that the fact that a claim has become unreviewable and
9   may have negative legal consequences, does not by itself serve as an exception to
10  mootness. Rather than create an exception that allows courts to review a moot matter,
11  courts avoid the perils of deciding moot cases while eliminating the collateral estoppel
12  effects. This established practice weighs heavily against finding an exception to
13  mootness based on the affirmative defenses and counter-claims presented here.

14         It also suggests the appropriate solution to the adverse consequences pointed to
15  by SDCOE. In hearing the IDEA appeal, this Court acts in an appellate capacity, and
16  the same considerations regarding the effects of an unreviewable opinion are applicable
17  here. Vacateur in moot cases has been employed by district courts sitting in an
18  appellate capacity, including in review of IDEA cases. *L.K. ex rel. Henderson v. N.C.*
19  *State Bd. of Educ.*, No. 5:08-cv-85-BR, 2011 WL 861181, at *4-5 (E.D. N.C. Feb. 18,
20  2011), *adopted by* 2011 WL 861154 (E.D.N.C. Mar. 9, 2011); *Van Alstyne Indep. Sch.*
21  *Dist. v. Andre S.*, No. 4:09-cv-89, 2010 WL 715560, at *7 (E.D. Tex. Feb. 23, 2010).

22         The Supreme Court has noted the equitable nature of vacateur in this
23  circumstance. *U.S. Bancorp*, 513 U.S. at 25. In determining whether to vacate the
24  lower court decision, the primary inquiry is "whether the party seeking relief from the
25  judgment below caused the mootness by voluntary action." *In re Burrell*, 415 F.3d at
26  999 (quoting *U.S. Bancorp*, 513 U.S. at 24). Vacateur may be denied where a party
27  voluntary forfeits his legal remedy, such that the judgment is not unreviewable, but
28  simply unreviewed by his own choice. *U.S. Bancorp*, 513 U.S. at 25. Where there are

1  no circumstances to cause fairness and equity to tilt against vacatur, the "ordinary

2  practice" is to "clear the path for future relitigation of the issues." *See Alvarez v. Smith*,

3  558 U.S. 87, 97 (2009); *United States v. Munsingwear*, 340 U.S. 36, 40 (1950).

4      The IDEA appeal was mooted because SDCOE was required by law to

5  implement the OAH decision without waiting for judicial review. SDCOE, the party

6  seeking review, took no voluntary action to moot this case. SDCOE has done nothing

7  to disentitle it to equitable relief from the adverse consequences of an unreviewable

8  decision. As such, it is appropriate for this Court to vacate the decision of the ALJ and

9  remand with instructions to dismiss.

10     iii. Conclusion

11     SDCOE argues that it is not the proper party to pay for the placement of a

12  student such as M.P. In its efforts to impose responsibility on other parties, SDCOE

13  seeks to force Pollock to continue to litigate. SDCOE may find it helpful to its

14  litigation posture to impose the burdens of litigation on a student and a parent.

15  However, SDCOE's live controversy is with the County and Regional Center, not with

16  M.P. or his mother. SDCOE must therefore pursue its claims without involving a party

17  with whom it has no live dispute and which cannot give it effective relief.

18     Based on the foregoing, the first cause of action is **DISMISSED WITHOUT**

19  **PREJUDICE AS MOOT**. The case does not fit the mootness exception for cases

20  capable of repetition while evading review because there is no reasonable expectation

21  that the circumstances giving rise to the need for MP's RTC placement will re-occur.

22  Moreover, SDCOE presents no collateral legal consequences that justify application

23  of the narrow second exception to mootness. The negative consequences of the

24  unreviewable decision will be alleviated by vacating the decision and dismissing the

25  underlying case. The decision of the ALJ is therefore **VACATED** and this Court

26  **REMANDS** the appeal with instructions to the ALJ to dismiss the matter.

27  ///

28  ///

## B.  Declaratory Relief Actions

Pollock also seeks to be dismissed as a defendant from the second and third claims for declaratory relief.  SDCOE seeks declaratory relief "related to the legal rights and duties of the SDCOE and the County" in the second claim, and "related to the legal rights and duties of the SDCOE and the San Diego Regional Center" in the third claim.  (Am. Compl. ¶¶ 42, 50).  SDCOE has named Pollock and the County as defendants in the second claim, and Pollock and Regional Center as defendants in the third.

SDCOE makes two arguments.  First, it argues that the declaratory judgment actions are not moot because the two exceptions discussed above apply to this case.  Upon review of the claims, this Court finds that its reasons for finding claim one moot also apply to the declaratory relief claims.  There is no reasonable expectation that SDCOE will face these issues again with respect to Pollock or M.P., and SDCOE does not point to  any collateral legal consequences justifying application of an exception in the declaratory relief actions.  SDCOE does not raise new arguments regarding these exceptions with respect to the declaratory relief actions.  However, SDCOE also argues that this Court has subject matter jurisdiction over the declaratory judgment claims even without the IDEA appeal.

Declaratory relief as to Pollock is only available if there is an actual case or controversy in this jurisdiction.  *Am. States Ins. Co.*, 15 F.3d at 143.  No such controversy exists in this case.  SDCOE does not ask this Court to grant declaratory relief as to the legal rights and duties of SDCOE and Pollock or M.P.  Examination of the claims reveals that Pollock is alleged to deny SDCOE's contentions about M.P.'s status and the responsibilities of the different parties.  She is also alleged to be potentially responsible for certain costs.  Declaratory relief would have no apparent direct impact on Pollock, who has no control over either entity.

SDCOE insinuates that Pollock has a "direct interest in the outcome" because she might be asked to bear some responsibility for residential placement if SDCOE

13cv1647

prevails. (Opp'n at 14). This does not create a "controversy" with Pollock. Such effects are indirect and purely speculative. They would require independent decisions by the County or Regional Center to seek money from Pollock in a separate action. Such consequences are speculative, and SDCOE does not argue that this Court will be making any decisions regarding financial responsibility for Pollock. SDCOE cites no precedent for compelling Pollock to be involved in litigation that does not directly affect her rights and obligations based on speculative, indirect financial consequences.

As discussed above, it is also mere speculation to say that SDCOE will ever find itself facing the same issue with Pollock. There is also no indication that SDCOE faces any threat of future litigation by Pollock regarding these issues. Even if this Court has jurisdiction to issue declaratory relief as to Pollock, it would exercise its discretion not to do so. This Court will not award relief that is not necessary to resolve a controversy between these parties and might bear only upon a speculative future controversy.

SDCOE cites to *City of Colton*, in which a court was found to have jurisdiction over a claim for declaratory relief as to future costs after the claims for past costs had been dismissed. *City of Colton*, 614 F.3d at 1004, 1006. However, nothing in *City of Colton* overrides the jurisdictional requirement for an "actual controversy." Here, there is no actual controversy between SDCOE and Pollock. SDCOE also contends that declaratory relief is necessary to avoid future demands from the County and disagreements with Regional Center. SDCOE does not explain why declaratory relief as to *Pollock* is necessary to resolve these issues.

SDCOE cites to precedent stating that the question is whether "the facts alleged under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1376 (Fed. Cir. 2012) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)). SDCOE has also pointed to the Ninth Circuit's statement in *E.E.O.C. v. Federal Express Corp.* that the collateral consequences exception applied because there

1   was a "substantial controversy, between parties having adverse legal interests, of
2   sufficient immediacy and reality to warrant the issuance of a declaratory judgment."
3   558 F.3d at 847 (quoting *In re Burrell*, 415 F.3d at 999). It argues that a federal court
4   has a basic obligation to consider the merits and award relief on a claim where there
5   is independent subject matter jurisdiction. (Opp'n at 13-14 (citing *Countrywide Home*
6   *Loans, Inc. v. Mortg. Guaranty Ins. Corp.*, 642 F.3d 849, 855-56 (9th Cir. 2011)
7   (district court required to consider motion under the Federal Arbitration Act))).
8   However, as SDCOE and Pollock are no longer "parties having adverse legal interests,"
9   this does not justify the issuance of declaratory relief as to Pollock.
10      Based on the foregoing, SDCOE has articulated no basis for seeking declaratory
11  relief against Pollock.  The Second and Third Causes of Action are therefore
12  **DISMISSED WITHOUT PREJUDICE AS MOOT** as to Pollock only.

**CONCLUSION**

14      SDCOE's first claim for relief is **DISMISSED WITHOUT PREJUDICE AS**
15  **MOOT,** and the second and third claims for relief are **DISMISSED WITHOUT**
16  **PREJUDICE AS MOOT** as to Pollock. The decision of the ALJ is **VACATED** and
17  this Court **REMANDS** the appeal with instructions to the ALJ to dismiss the matter.
18  This Court expresses no opinion as to the validity of any claims against the other
19  Defendants in light of this Order.
20      **IT IS SO ORDERED**.

22  Dated: ___6/20___, 2014

HON. ROGER T. BENITEZ
United States District Judge

13cv1647