FILED

14 SEP -8  AM 9: 46

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY:                          DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO COUNTY OFFICE OF EDUCATION,<br><br>                         Plaintiff,<br><br>vs.<br><br>JULIA POLLOCK, as parent on behalf of M.P., a minor; COUNTY OF SAN DIEGO; SAN DIEGO-IMPERIAL COUNTIES DEVELOPMENTAL SERVICES, INC., dba the SAN DIEGO REGIONAL CENTER FOR THE DEVELOPMENTALLY DISABLED,<br><br>                       Defendants.<br><br>AND RELATED COUNTERCLAIMS | CASE NO. 13-CV-1647-BEN (BLM)<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO DISMISS;**<br><br>**(2) DISMISSING AMENDED COUNTERCLAIM**<br><br>[Docket No. 94] |

Before this Court is a Joint Motion to Dismiss the Second Through Fifth Claims for Relief Set Forth in the First Amended Complaint, filed by Defendant County of San Diego (County) and Defendant San Diego-Imperial Counties Development Services, Inc., dba the San Diego Regional Center for the Developmentally Disabled (Regional Center) (collectively, "Defendants"). (Docket No. 94). Defendants ask this Court to dismiss the remaining claims against them pursuant to Federal Rules of Civil Procedure

12(b)(1) and 12(h)(3). For the reasons stated below, the Joint Motion to Dismiss is **GRANTED**.

## BACKGROUND

This case arose out of a dispute regarding financial responsibility for M.P., a minor who was arrested for murder and assault with a deadly weapon. (Am. Compl. ¶ 1). While detained in Juvenile Hall, the San Diego County Office of Education (SDCOE) was responsible for providing M.P. with the free appropriate public education (FAPE) guaranteed by the Individuals with Disabilities Education Act (IDEA). (*Id.* ¶ 4; 20 U.S.C. §§ 1400, *et seq.*; CAL. EDUC. CODE §§ 48645.1, 48645.2, 56150). M.P. was deemed incompetent to stand trial on August 21, 2012. (Am. Compl. ¶ 5).

On November 16, 2012, M.P, through his mother, Pollock, filed a complaint for a due process hearing with the California State Office of Administrative Hearings (OAH) under the IDEA, pursuant to 20 U.S.C. § 1415(f).

The administrative law judge (ALJ) identified the issues as follows:

(1) Since January 16, 2012, has the [SD]COE deprived [M.P.] of a free appropriate public education (FAPE) both procedurally and substantively by failing to offer:
    (a) Appropriate mental health services including therapy and counseling;
    (b) Appropriate academic services when [SD]COE offered 240 minutes of academic instruction daily; and
    (c) Appropriate occupational therapy services?

(2) Since August 21, 2012, did the [SD]COE deny [M.P.] a FAPE both procedurally and substantively by failing to offer [M.P] an appropriate placement when it failed to offer him a placement at a residential treatment center (RTC), which was the least restrictive environment (LRE)?

(AR 2410). M.P. sought an order directing SDCOE to place him at a residential treatment center (RTC), and awarding him compensatory education.

The ALJ conducted hearings, and rendered a decision on April 16, 2013. (AR 2409-2458). In the decision, the ALJ ruled in M.P.'s favor as to issues 1(c) and 2. (AR 2457). Accordingly, the ALJ ordered that, within 60 days, SDCOE conduct an occupational therapy (OT) assessment, and convene an Individualized Education

13cv1647

Program (IEP) meeting to determine M.P.'s present levels of performance, goals, and services in the area of occupational therapy. (*Id.*) The ALJ also ordered that SDCOE immediately begin a search for an appropriate RTC placement for M.P. which specializes in behavior modification and is experienced in treating children with fetal alcohol syndrome disorders. (*Id.*) SDCOE was ordered to complete the search for the residential placement, and to convene an IEP meeting to review and implement the placement, within 45 days. (*Id.*)

On July 15, 2013, SDCOE filed a Complaint in which it sought judicial review of the ALJ's decision. (Docket No. 1). A First Amended Complaint was filed on October 24, 2013, adding the County and Regional Center as defendants and asserting four additional claims for relief. (Docket No. 9). The first claim for relief, against Pollock alone, appealed the ALJ's decision under the IDEA. The second claim for relief sought declaratory relief against Pollock and the County. The third claim sought declaratory relief against Pollock and Regional Center. A fourth claim asserted breach of contract against Regional Center. The fifth claim demanded contribution and indemnification from the County and Regional Center. SDCOE alleged that this Court had jurisdiction over the declaratory relief claims pursuant to 28 U.S.C. § 2201(a) and 28 U.S.C. § 1331. (Am. Compl. ¶ 27). It further alleged that this Court had supplemental jurisdiction over the claims for breach of contract and contribution and indemnification pursuant to 28 U.S.C. § 1367. (*Id.*) On June 20, 2014, this Court granted Pollock's motion to dismiss the claims against her and vacated the IDEA hearing decision. (Docket No. 86).

At issue in this Motion are SDCOE's contentions that it was not responsible for making and paying for the residential placement of M.P. It contends that the County or the Regional Center should have borne these burdens, rather than imposing them upon SDCOE.

SDCOE asserts that a juvenile court may make orders for services to assist a minor in attaining competency. (Am. Compl. ¶ 6 (citing CAL. WELF. & INST. CODE

§ 709)). The San Diego County Superior Court has issued a protocol for handling such competency issues, the "Protocol for Competence Evaluations." (*Id.*) The Protocol states that the policy in San Diego County is "to evaluate a minor's competence as early as possible and, when indicated, to provide services to help the minor regain competence in a timely manner." (*Id.* (citing Protocol, I.A)). It also provides for the designation of a probation officer to begin "immediate coordination of a restoration and/or placement and services plan for the minor," and that the court, the minor's attorney, the prosecuting attorney, and the Probation Department "will work together to provide appropriate services for the minor." (*Id.* (citing Protocol, VII.B & n.3)).

SDCOE alleges that once M.P. was declared incompetent, it was "incumbent upon the County to make a suitable placement for him where it could be determined whether he had a substantial probability of achieving competency in the foreseeable future and where he could make progress towards that goal." (*Id.* ¶ 7). It cites to the due process protections of the federal and state Constitutions for the notion that the County lacks the authority to hold a criminal defendant in jail indefinitely instead of taking steps to restore him to competency. (*Id.* (citing *Oregon Advocacy Ctr. v. Mink,* 322 F.3d 1101, 1121 (9th Cir. 2000)). SDCOE further claims that state law provides that if a non-educational public agency, like the County, makes a residential placement for a child, it would be obligated to pay for the residential and non-educational costs of the placement. (*Id.* ¶ 9 (citing CAL. EDUC. CODE § 56159; CAL. GOV. CODE § 7581)). If the child is placed out of state, it would be responsible for the entire cost. (*Id.* (citing CAL. GOV. CODE § 7579(a))).

SDCOE alleges that the County sought to avoid this obligation, and therefore advised the juvenile court that SDCOE or Cajon Valley Unified School District should make and pay for the placement. (*Id.* ¶ 10). It contends that the County financed M.P.'s legal case against SDCOE in the hope that a court would find SDCOE responsible. (*Id.* ¶ 11). It claims that M.P. was placed in a facility where he had already been accepted, based on a referral by the County approximately six months

1  earlier. (*Id.* ¶ 13).

2      SDCOE further asserts that "[u]nder state law and the County's Protocol," the

3  Regional Center was to "play an integral role in providing services and/or a placement

4  for M.P. once he was deemed incompetent to stand trial." (*Id.* ¶ 14).

5      Defendants County and Regional Center filed the instant Joint Motion on July

6  11, 2014, contending that this Court lacks subject matter jurisdiction over SDCOE's

7  remaining claims against the Defendants. (Docket No. 94). SDCOE filed an

8  Opposition on July 28, 2014. (Docket No. 99). Defendants replied on August 4, 2014.

9  (Docket No. 103). This Court ordered additional briefing on August 11, 2014.

10 (Docket No. 105). The parties filed their supplemental briefs on August 22, 2014

11 (Docket Nos. 108, 109), and their responses on August 29, 2014. (Docket Nos. 110,

12 112).

13                   **LEGAL STANDARD**

14     Federal courts are courts of limited jurisdiction, and they possess only that power

15 authorized by Constitution and statute. *E.g., Kokkonen v. Guardian Life Ins. Co. of*

16 *Am.*, 511 U.S. 375, 377 (1994) (citations omitted). It is presumed that a cause lies

17 outside the limited jurisdiction of federal courts, and the burden of establishing the

18 contrary rests upon the party asserting jurisdiction. *Id.* (citations omitted).

19     A district court is required to dismiss an action if at any time it determines that

20 it lacks subject matter jurisdiction. FED. R. CIV. P. 12(h)(3). A party may challenge

21 subject matter jurisdiction by bringing a motion to dismiss pursuant to Federal Rule of

22 Civil Procedure 12(b)(1). FED. R. CIV. P. 12(b)(1).

23     A. Federal Question Jurisdiction

24     District courts have "original jurisdiction of all civil actions arising under the

25 Constitution, laws, or treaties of the United States" pursuant to 28 U.S.C. § 1331. A

26 case arises under federal law in one of two ways.

27     First, a federal law can create the cause of action asserted. *Gunn v. Minton*, 133

28 S. Ct. 1059, 1064 (2013). Such cases account "for the vast bulk of suits that arise

1    under federal law." *Id.*

2        Second, there is a "special and small category" of cases where jurisdiction lies

3    where a claim originates in state, rather than federal law. *Id.* at 1064-65 (quoting

4    *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). The

5    Supreme Court has stated that: "federal jurisdiction over a state law claim will lie if a

6    federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4)

7    capable of resolution in federal court without disrupting the federal-state balance

8    approved by Congress." *Id.* at 1065 (characterizing the conclusion of *Grable & Sons*

9    *Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)). If all four

10   requirements are met, jurisdiction is proper because of the "'serious federal interest in

11   claiming the advantages thought to be inherent in a federal forum', which can be

12   vindicated without disrupting Congress's intended division of labor between state and

13   federal courts." *Id.* (quoting *Grable*, 545 U.S. 313-14)).

14       B.  Declaratory Judgment Act

15       The Declaratory Judgment Act (DJA) authorizes a court of the United States to

16   grant declaratory relief where there is "a case of actual controversy within its

17   jurisdiction," subject to certain exceptions. 28 U.S.C. § 2201(a). The court may

18   "declare the rights and other legal relations of any interested party seeking such

19   declaration, whether or not further relief is or could be sought." *Id.*

20       The purpose of declaratory relief is to "afford an added remedy to one who is

21   uncertain of his rights and who desires an early adjudication thereof without having to

22   wait until his adversary should decide to bring suit, and to act at his peril in the

23   interim." *Shell Oil Co. v. Frusetta*, 290 F.2d 689, 692 (9th Cir. 1961). Declaratory

24   relief may be sought by "any interested party" involving an actual controversy that "has

25   not reached a stage at which either party may seek a coercive remedy and in cases

26   where a party who could sue for coercive relief has not yet done so." *Seattle Audubon*

27   *Soc. v. Moseley*, 80 F.3d 1401, 1405 (9th Cir. 1996) (citation omitted).

28       The DJA does not extend new jurisdiction to federal courts. *Skelly Oil Co. v.*

*Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); *Lear Siegler, Inc. v. Adkins*, 330 F.2d 595, 599 (9th Cir. 1964). Instead, the DJA makes a new remedy available where jurisdiction otherwise exists. *Skelly Oil*, 339 U.S. at 671; *Lear Siegler*, 330 F.2d at 599. To obtain declaratory relief in federal court, there must be an independent basis for jurisdiction. *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citation omitted).

In determining whether federal question jurisdiction exists over a request for a declaratory judgment pursuant to the DJA, the well-pleaded complaint rule applies. "The plaintiff's claim itself must present a federal question 'unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose.'" *Skelly Oil*, 339 U.S. at 672 (quoting *Taylor v. Anderson*, 234 U.S. 74, 75-76 (1914)). The Supreme Court's decision in *Skelly Oil* has come to stand for the proposition that "if, but for the availability of the declaratory judgment procedure, the federal claim would arise only as a defense to a state created action, jurisdiction is lacking." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 16 (1983) (quotation omitted) (characterizing the decision in *Skelly Oil*). In determining if federal question jurisdiction exists over claims for declaratory judgment, courts have looked to the potential coercive actions that could be brought. *Skelly Oil*, 339 U.S. at 672 (no federal question jurisdiction where if declaratory judgment plaintiff sought damages or specific performance of contracts, he could not do so in federal court because they would arise under state contract law). Courts also look to the "character of the threatened action." *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843, 848 (2014) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952)). In doing so, they ask whether a "coercive action" brought by the declaratory judgment defendant would "necessarily present a federal question." *Id.* (quoting *Franchise Tax Bd.*, 463 U.S. at 19).

///

///

C. Supplemental Jurisdiction

Where a district court has original jurisdiction over a civil action, the court has supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This jurisdiction is subject to certain exceptions. 28 U.S.C. § 1367(b), (c). District courts may decline to exercise supplemental jurisdiction over a claim if:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

## DISCUSSION

Although this matter began as an appeal of a hearing decision pursuant to the IDEA, the appeal has been dismissed as moot. What remains of SDCOE's complaint is a dispute between various entities created by state law regarding who has financial responsibility under state laws and regulations, including the state laws implementing the IDEA. The Court concludes that although some federal laws bear a tangential relationship to the claims, the claims themselves are not federal and do not "arise under" federal law. The Court declines to exercise supplemental jurisdiction because California state courts are better suited to resolve these novel and complex issues of state law.

SDCOE asserts in the Amended Complaint that this Court has original jurisdiction over the declaratory judgment claims in claims two and three, and supplemental jurisdiction over claims four (breach of contract) and claim five (contribution and indemnification). (Am. Compl. ¶ 27). In their Opposition to the instant Motion, SDCOE asserts that the court has subject matter jurisdiction over all four remaining claims because they "raise substantial questions of federal law" and that

1 the Court should, in the alternative, exercise supplemental jurisdiction. (Docket No.
2 99 at 15).

3    A. Federal Question Jurisdiction

4    Defendants assert that there is no basis for federal question jurisdiction over any
5 of the four remaining claims. With respect to the declaratory judgment claims, they
6 contend that the only claim in this action that met the "case or controversy"
7 requirement of Article III was the IDEA appeal against Pollock, which has now been
8 dismissed. (Docket No. 94 at 3-4). They contend that the declaratory relief claims are
9 premised upon state substantive law, and that there is therefore no federal jurisdiction
10 for these claims. (*Id.* at 4-5). Defendants also argue that the causes of action for
11 breach of contract, and for contribution and indemnification, are state law claims. (*Id.*
12 at 6-7).

13    SDCOE seeks declaratory relief "related to the legal rights and duties of the
14 SDCOE and the County" in the second claim, and "related to the legal rights and duties
15 of the SDCOE and the San Diego Regional Center" in the third claim. (Am. Compl.
16 ¶¶ 42, 50). Although SDCOE named Pollock and the County as defendants in the
17 second claim, and Pollock and Regional Center as defendants in the third claim,
18 Pollock has been dismissed from this action. (Docket No. 86).

19    With respect to the declaratory judgment action against the County, Plaintiff's
20 Amended Complaint asserts that:

21    The County's responsibility to provide for placement and services to
    incompetent minors arises, inter alia, from California Welfare &
22    Institutions Code sections 709, 900(a), and 902, the United States and
    California Constitutional guarantees of due process to criminal
23    defendants, the San Diego Superior County's "Protocol for Competence
    Evaluations" (Last Revision 4/1/11), as well as law governing the
24    County's obligation to provide mental health services including Medi-
    Cal's "Early Periodic, Screening Diagnosis and Treatment" supplementary
25    mental health services (42 C.F.R. § 435.145; 9 Cal. Code of Regs
    §§ 1810.100 *et seq.*) and/or the Bronzan-McCorquodale Act (Cal. Welf.
26    & Inst. Code §§ 5600 *et seq.*).

27 (Am. Compl. ¶ 44).

28    In the declaratory judgment cause of action against the Regional Center, SDCOE

1    alleges that "once M.P. was referred for or became eligible for Regional Center
2    services, the Regional Center was obligated to provide a RTC placement for him,
3    regardless of whether or when SDCOE might also be responsible for such a
4    placement." (*Id.* ¶ 51).

5         In Opposition to the Motion, SDCOE asserts that the "central issues" in the
6    remaining claims turn on federal law. (Docket No. 99 at 4). It further argues that even
7    if the allegations are currently insufficient, this Court should grant leave to amend the
8    Complaint to cure defects in the jurisdictional allegations. Defendants assert that any
9    effort to amend the allegations would be futile.

10        SDCOE asserts several possible federal bases for the declaratory relief claims.
11   (Docket No. 109 at 2-4). First, SDCOE points to the two affirmative "coercive actions"
12   which it has pled against the Regional Center in claim four (breach of contract) and
13   Regional Center and the County in claim five (contribution and indemnification),
14   which it contends present federal questions that support jurisdiction. In addressing
15   these actions with respect to the declaratory judgment claims, the Court will necessarily
16   determine if federal question jurisdiction exists as to claims four and five. SDCOE also
17   contends that jurisdiction is supported by a coercive action by the County against
18   SDCOE for attorney's fees. (Docket No. 109 at 4).

19                       i.  SDCOE's IDEA Obligations

20        SDCOE contends that it will be necessary to determine the parties' obligations
21   under the federal IDEA. (Docket No. 99 at 4). It argues that the IDEA imposes a
22   responsibility on a local education agency to make a placement when an RTC is needed
23   solely for educational purposes, but not if the placement is driven by other needs. (*Id.*)
24   SDCOE contends that M.P.'s placement was driven by other needs, and therefore
25   SDCOE was never responsible for the costs. (*Id.*)

26        SDCOE appears to suggest, by its reference to *Clovis Unified School District v.*
27   *California Office of Administrative Hearings*, 903 F.2d 635 (9th Cir. 1990), that the
28   IDEA does not impose obligations on SDCOE here, where the placement is for non-

1  educational reasons. The Court notes that SDCOE's argument that it is not obligated
2  under the IDEA would appear to be a possible defense to some form of a coercive
3  action to force SDCOE to pay for the placement pursuant to the IDEA. However,
4  SDCOE does not point to any coercive action that could be brought against SDCOE
5  based upon the IDEA. The Court notes SDCOE has previously insinuated that the
6  County could bring a future due process action against it via the parent of a minor such
7  as M.P. Although SDCOE does not raise this argument, the Court notes that any such
8  due process hearing is speculative, that SDCOE has provided this Court with no
9  authority to support an argument that such a hearing could qualify as a coercive action,
10 and that SDCOE has not provided this Court with authority that would allow it to grant
11 declaratory relief with respect to either Defendant because they might fund or
12 encourage an action by an unknown third party.

13     SDCOE does contends that it could bring affirmative coercive actions against
14 the Defendants, as demonstrated by its claims for reimbursement and indemnification,
15 and its claim for breach of contract. (Docket No. 109 at 4).

16          ii. Reimbursement, Contribution, and Indemnification

17     In the fifth cause of action, SDCOE seeks "contribution and indemnification"
18 from the County and Regional Center. (Am. Compl. at 18). It alleges that the County
19 failed to meet its obligation to make a placement for M.P., and that SDCOE therefore
20 incurred a number of costs related to the placement, M.P.'s education, and this
21 litigation. (*Id.* ¶¶ 62-64). It contends that because the County "abdicated its duty," "in
22 equity and good conscience the County should now be responsible for providing
23 SDCOE with complete or partial indemnification and/or contribution for any and all
24 costs, expenses, fees, damages, losses or other obligations incurred . . ." (Am. Compl.
25 ¶ 65). SDCOE cites without explanation to "Cal. Civ. Code §§ 1432, 2779; 20 U.S.C.
26 § 1412(a)(12)(A), (B); 34 C.F.R. § 300.154(a)(1), (b)(2)." (*Id.*) It further alleges that
27 Regional Center failed to meet its obligation to place M.P., and asserts that "in equity
28 and good conscience, and under the terms of the Interagency Agreement, the Regional

1   Center should now be responsible for providing SDCOE with complete or partial
2   indemnification and/or contribution . . ." (Am. Compl. ¶¶ 67, 70).

3                                a. IDEA Reimbursement

4       SDCOE cites to 20 U.S.C. § 1412(a)(12)(B), an IDEA provision regarding the
5   obligations of public agencies.  In order to be eligible for IDEA funds, a state is
6   required to meet a number of conditions.  20 U.S.C. § 1412(a).  These conditions
7   include obligations to ensure the provision of certain services. The IDEA requires that
8   the State have a mechanism for interagency coordination between public agencies and
9   the state educational agency, in order to ensure that certain services that are needed to
10  ensure a free appropriate public education are provided, even during the pendency of
11  a dispute. 20 U.S.C. § 1412(a)(12)(A).  The agreement or mechanism must include
12  certain features, such as the identification of the financial responsibility of each agency,
13  the conditions and terms of reimbursement, procedures for resolving interagency
14  disputes to secure reimbursement or otherwise implement the provisions of the
15  mechanism or agreement, and policies and procedures to determine and identify the
16  interagency coordination responsibilities of each agency.       20 U.S.C.
17  § 1412(a)(12)(A)(i)-(iv). These requirements can be met through statute or regulation,
18  signed agreements, or other appropriate written methods. 20 U.S.C. § 1412(a)(12)(C).

19      The subsection on the obligation of a "public agency" provides that:

20      If any public agency other than an educational agency is otherwise
    obligated under Federal or State law, or assigned responsibility under
21  State policy pursuant to subparagraph (A), to provide or pay for any
    services that are also considered special education or related services
22  (such as, but not limited to, services described in section 1401(1) relating
    to assistive technology devices, 1401(2) relating to assistive technology
23  services, 1401(26) relating to related services, 1401(33) relating to
    supplementary aids and services, and 1401(34) relating to transition
24  services) that are necessary for ensuring a free appropriate public
    education to children with disabilities within the State, such public agency
25  shall fulfill that obligation or responsibility, either directly or through
    contract or other arrangement pursuant to subparagraph (A) or an
26  agreement pursuant to subparagraph (C).

27  20 U.S.C. § 1412(a)(12)(B)(i).

28      The subsection also contains a provision addressing the obligations when a

public agency fails to provide or pay for such services. 20 U.S.C. § 1412(a)(12)(B)(ii). The local education agency or State agency responsible for developing the child's IEP is required to provide or pay for such services. *Id.* The educational agency or State agency is then:

> authorized to claim reimbursement for the services from the public agency that failed to provide or pay for such services and such public agency shall reimburse the local educational agency or State agency pursuant to the terms of the interagency agreement or other mechanism described in subparagraph (A)(I) according to the procedures established in such agreement pursuant to subparagraph (A)(ii).

(*Id.*) SDCOE also cites to the implementing regulations. *See* 34 C.F.R. § 300.154.

SDCOE contends that this provision applies to the County and Regional Center. Although it concedes that Regional Center is "not itself a public agency," it argues that California Department of Developmental Services (DDS) is a public agency, and the Regional Center acts under authority delegated by DDS. (Docket No. 99 at 5-6). It argues that Regional Center administers California's Lantermann Act, that the Act obligated it to place M.P., and that Regional Center entered into an interagency agreement, as contemplated by the IDEA, to carry out its duties. (*Id.*) SDCOE argues that Regional Center "stands in the shoes" of DDS and is likewise subject to the reimbursement provision. (Docket No. 99 at 6).

Defendants first contend that the complaint does not allege claims rooted in the IDEA, and that SDCOE is attempting to rewrite the pleadings to create jurisdiction. (Docket No. 103 at 2). Defendants also contend that neither of them qualify as a "public agency" for purposes of the provision. (*Id.*)

Federal regulations promulgated pursuant to the IDEA define "public agency" to include "the SEA [State educational agency], LEAs [Local educational agencies], ESAs [educational service agencies], nonprofit public charter schools that are not otherwise included as LEAs or ESAs and are not a school of an LEA or ESA, and any other political subdivisions of the State that are responsible for providing education to children with disabilities." 34 C.F.R. § 300.33; *see also* 34 C.F.R. § 300.2. California's Education Code states:

13cv1647

1   "Public agency" means a school district, county office of education,
    special education local plan area, a nonprofit public charter school that is
2   not otherwise included as a local educational agency and is not a school
    within a local educational agency, or any other public agency under the
3   auspices of the state or any political subdivisions of the state providing
    special education or related services to individuals with exceptional
4   needs. For purposes of this part, "public agency," means all of the public
    agencies listed in Section 300.33 of Title 34 of the Code of Federal
5   Regulations.

6   CAL. EDUC. CODE § 56028.5.

7          Defendants contend that neither entity qualifies, as neither party was responsible

8   for M.P.'s educational needs. SDCOE cites to *County of Los Angeles v. Smith*, 74 Cal.

9   App. 4th 500 (2d Dist. 1999), in which a county sought reimbursement from a minor's

10  mother for placement costs. The trial court originally entered judgment for the county,

11  and the court of appeal partially reversed the award, finding that the county was not

12  obligated to provide a FAPE to a minor ward of the county at no cost to the mother

13  until after an IEP determined that the placement was necessary. *Id.* at 503, 521-23.

14  Defendants point out that, in the instant case, M.P. never was a ward of the County.

15  (Docket No. 103 at 4).  They state that the County was never obligated to provide a

16  FAPE under the IDEA, and could not have done so because it lacked jurisdiction over

17  M.P. to make such decisions.  (*Id.*)  Defendants also point to the fact that Regional

18  Center is a private, non-profit corporation. (Docket No. 103 at 3 n.3).  They contend

19  that Regional Center was not responsible for M.P.'s needs, and that the IDEA has no

20  bearing on Regional Center. (*Id.* at 4).

21         Defendants also point out that the federal provisions cited do not expressly create

22  a federal cause of action, and argue that it should be presumed that Congress did not

23  intend to create federal jurisdiction. (Docket No. 110 at 2).  They further contend that

24  the determination of which entity is responsible for paying for "special education and

25  related services" depends not upon the federal law, but upon the state statutes and

26  regulations. (*Id.*)

27         The Court determines that the reimbursement provisions cited to by SDCOE do

28  not support federal question jurisdiction.  First, the provision does not explicitly create

1   a federal cause of action.[1]   Second, to the extent the provision provides for
2   reimbursement, the matter clearly turns upon interpretation not of federal law, but of
3   the State's implementing measures and agreements.   The IDEA provisions cited by
4   SDCOE do not specify who is required to pay for which services, they merely require
5   an education agency to pay for services and seek reimbursement where a "public
6   agency other than an educational agency is otherwise obligated under Federal or State
7   law, or assigned responsibility under State policy." *See* 20 U.S.C. § 1412(a)(12)(B).
8   Further, the reimbursement provision provides that the manner of that reimbursement
9   is governed by the interagency agreements or other mechanisms established pursuant
10  to 20 U.S.C. § 1412(a)(12)(A).   20 U.S.C. § 1412(a)(12)(B)(ii).

11          In determining whether the County or Regional Center is required to pay for
12  services, the critical question will be whether or not California's statutes, regulations,
13  and interagency agreements impose any relevant obligations upon the Defendants.
14  Although the state laws may have been intended to implement federal laws or
15  regulations, there is no indication that this Court will need to interpret federal laws or
16  regulations to resolve this dispute.   SDCOE has not challenged the validity of the
17  implementing State statutes and regulations themselves.   Although SDCOE has
18  generally argued that state statutes mirror federal requirements and disputes are
19  typically decided through reference to federal court interpretations, (Docket No. 112
20  at 5), nothing before this Court indicates that interpretation of federal law will be
21  necessary to resolution of this dispute, much less that there is a substantial question.

22

23          [1] SDCOE cites to a Northern District of California decision in *Katherine G. ex*
24  *rel. Cynthia G. v. Kentfield School District*, 261 F. Supp. 2d 1159 (N.D. Cal. 2003) for
    the notion that a school district's right to recoupment of monies it had paid or may be
25  obligated to pay on behalf of a special education student is a question of federal law
    arising under the IDEA.   (Docket No. 109 at 2).   However, the claim at issue in
26  *Katherine G.* was a counterclaim to an IDEA appeal which was explicitly based upon
    § 1415(i)(2). *Katherine G.*, 261 F. Supp. 2d at 1165, 1185.   The relevant section of the
27  IDEA explicitly permits civil actions by parties aggrieved by the findings and decisions
    made at the administrative hearing. 20 U.S.C. § 1415(i)(2).   SDCOE has not asserted
28  that it seeks relief against the County or Regional Center pursuant to this provision.
    Further, Defendants were not parties to the administrative hearing and the ALJ's
    decision has been vacated.

1    The Court also notes that SDCOE has not clearly indicated any basis for holding

2    either Defendant responsible for "services that are also considered special education

3    or related services" with respect to M.P. *See* 20 U.S.C. § 1412(a)(12)(B)(i). The fact

4    that, under certain circumstances, a county or DDS might have IDEA obligations that

5    allow it to qualify as a "public agency" does not necessarily imply that the provision

6    applies to the case at hand. (*See* Docket No. 99 at 5-7). Indeed, SDCOE has repeatedly

7    maintained that the residential placement was required for non-educational reasons.

8    (*E.g.*, Docket No. 99 at 4).    Although SDCOE has argued that Defendants are

9    responsible for services to M.P., SDCOE has not clearly argued that either Defendant

10   had responsibility *under the IDEA* to provide M.P. with a placement, much less

11   provided a basis for such a claim.[2]   (*See* Docket No. 112 at 6). It is not apparent that

12   the statute can be stretched to cover reimbursement in any situation where another

13   entity may have financial obligations.

14                            b.  Common Law

15      To the extent SDCOE may have sought to suggest that federal question

16   jurisdiction can be supported by a federal common law claim for reimbursement,

17   beyond the IDEA provisions discussed above, this claim must fail.    SDCOE briefly

18   refers to caselaw recognizing that a right to indemnification can arise under state or

19   federal law. (Docket No. 99 at 11).   SDCOE offers little argument that Congress

20   _____

21      [2] SDCOE has cited to other cases in which federal courts heard cases involving
     efforts to recover money paid to fulfill IDEA obligations. Unlike *Barbara Z. v.*
22   *Obradovich*, 937 F. Supp 710, 715 (N.D. Ill. 1996) and *Orange County Department of*
     *Education v. California Department of Education*, 668 F.3d 1052 (9th Cir. 2011), the
23   party from whom SDCOE seeks to recover money has not been properly alleged to be
     subject to IDEA obligations with respect to M.P.
24      SDCOE briefly suggests that *County of Los Angeles* supports an argument that
25   a county is responsible under the IDEA because M.P. was in custody, regardless of
     whether it receives IDEA funds. (Docket No. 112 at 6-7). However, that case involved
26   a county attempting to recover funds from a parent for provision of a FAPE, which is
     not permitted by the IDEA. 74 Cal. App. 4th at 518-22. Here, there is no state entity
27   attempting to recover money from a parent using state laws preempted by the IDEA.
28   The case also did not consider who qualifies as a "public agency" with respect to the
     specific reimbursement provision at issue.

1    intended to create a federal cause of action to allow entities like SDCOE to recover

2    where another entity improperly forces them to cover non-educational costs. *See*

3    *Northwest Airlines, Inc. v. Transport Workers Union of Am., AFL-CIO*, 451 U.S. 77,

4    90 (1981). Further, in the face of "comprehensive legislative schemes," the Supreme

5    Court has stated that the judiciary may not "fashion new remedies that might upset

6    carefully considered legislative programs." *Id.* at 97.

7         Rather than arguing that a federal cause of action exists, SDCOE cites to a case

8    in which a court found that it could apportion fees according to fault where "more than

9    one party has failed to comply with the IDEA." (Docket No. 99 at 11-12); *Jeremy M.*

10   *ex rel. L.M. v. Cent. Bucks Sch. Dist.*, No. CIV. A. 99-4954, 2001 WL 177185, *2 (E.D.

11   Penn. Jan. 31, 2001). However, SDCOE does not seek to hold them responsible for the

12   costs because of an alleged failure to comply with the IDEA, except for the

13   reimbursement claim discussed above. SDCOE's claim appears to be premised upon

14   a variety of state statutes and regulations that place obligations on Defendants. The

15   IDEA appears to be relevant only to the extent that SDCOE claims that it is not

16   responsible because the IDEA does not require it to cover the cost. Thus, to the extent

17   that SDCOE may have sought to argue that a common law reimbursement claim arose

18   under federal law, the claim must fail.

19                        c. Federal Due Process

20         SDCOE contends that federal question jurisdiction is also supported by its

21   allegation that the County has a responsibility to M.P. arising out of the U.S.

22   Constitution. (Docket No. 99 at 7). Essentially, it contends that M.P. had a liberty

23   interest in freedom from incarceration and restorative treatment under the Fourteenth

24   Amendment, and was entitled to mental health treatment that gave him a realistic

25   opportunity to be cured or to improve the mental condition. (*Id.* (citing *Oregon*

26   *Advocacy Ctr.*, 322 F.3d at 1121)). It contends that even though the County cannot

27   justify its failure to provide treatment based on a lack of resources, the County used the

28   special education process to shift the costs of placement to SDCOE. (*Id.*).

1   Defendants point out that neither M.P. nor his mother has asserted any such
2   claim, and that it is unclear how SDCOE would have standing to raise such an issue.
3   (Docket No. 103 at 1 n.1). SDCOE states that it is seeking to vindicate its own rights,
4   because the County also tramples on SDCOE's rights when it refuses to provide
5   residential treatment. They contend that the "federal nature" of this refusal to provide
6   placement and services raises a substantial question of federal law. (Docket No. 109
7   at 3).

8   To the extent SDCOE is arguing that the County's obligation to pay for the
9   placement stemmed, at least in part, from its obligations pursuant to the federal Due
10   Process Clause, SDCOE has failed to establish that this can properly support federal
11   question jurisdiction. SDCOE does not point to a federal cause of action against the
12   County based upon the Due Process Clause. Rather, this Court interprets SDCOE to
13   be arguing that it is entitled to reimbursement or indemnification from the County
14   because the County was obligated to pay for placement to fulfill its obligations
15   pursuant to the Due Process Clause. Similarly, it appears to argue that this action
16   against the County can support jurisdiction over the declaratory judgment action.

17   SDCOE has not met its burden to show that any of these claims arise under
18   federal law because of questions pertaining to the Due Process Clause. At the outset,
19   it is not clear whether there is an actual dispute regarding whether the County has
20   obligations under the due process clause. To the extent the parties dispute whether the
21   Due Process Clause obligates the County to pay for placement services for incompetent
22   minors such as M.P., there is no indication of what substantial question of federal law
23   would need to be resolved by this Court. It is insufficient for SDCOE to make a
24   cursory reference to a constitutional provision that might underlie an obligation, where
25   this Court cannot conclude from the record that there is some necessary and substantial
26   question pertaining to that provision. *See Merrell Dow Pharm. Inc. v. Thompson*, 478
27   U.S. 804, 813 (1986) (noting the "long-settled understanding that the mere presence
28   of a federal issue in a state cause of action does not automatically confer

1  federal-question jurisdiction.").

2                     d.  Conclusion

3          Based upon the Amended Complaint and the briefing before this Court, it does

4  not appear that there is a significant dispute regarding federal law that would support

5  this Court's jurisdiction over a claim by SDCOE for reimbursement, contribution, or

6  indemnification.   Accordingly, the Court finds that there is no federal question

7  jurisdiction over the reimbursement and indemnification claim in claim five, or over

8  the declaratory judgment claims in claims two or three to the extent they rely on such

9  a claim as a coercive action conferring jurisdiction.  Although SDCOE has had ample

10  opportunity to put forward a potential basis for "arising under" jurisdiction, it has been

11  unable to do so.  This Court has examined SDCOE's arguments regarding potential

12  amendments, and finds that none would suffice to confer jurisdiction.   It would

13  therefore be futile to allow SDCOE to amend its complaint to add additional

14  jurisdictional allegations.

15                iii.  Breach of Contract

16          In the Amended Complaint, SDCOE asserts a breach of contract claim against

17  Regional Center.  It alleges that SDCOE and Regional Center are parties to a written

18  agreement that sets forth their respective rights and duties regarding SDCOE students

19  who are also Regional Center consumers.  (Am. Compl. ¶ 56).   It contends that

20  Regional Center was to pay for residential and non-educational costs of any placement

21  made to address non-educational needs if the placement was made unilaterally or

22  jointly with SDCOE. (*Id.* ¶ 57). It contends that even though it found M.P. eligible for

23  a placement for non-educational reasons, Regional Center failed to make the placement

24  or reimburse SDCOE. (*Id.* ¶ 58).

25          Breach of contract actions generally arise under state law, and SDCOE points to

26  no federal cause of action. *See Skelly Oil Co.*, 339 U.S. at 672.  SDCOE argues that the

27  fact that Regional Center has obligations based in contract does not mean that the claim

28  cannot arise under federal law, citing to a case in which the dispute required the

1   interpretation and application of a federal law to the contractual arrangement of the

2   parties. (Docket No. 109 at 3 (citing *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799,

3   806-07 (4th Cir. 1996))).  It also contends that Regional Center provides services that

4   could be considered special education related services, and Regional Center carries out

5   certain responsibilities imposed upon DDS by state law. (Docket No. 112 at 7).  They

6   contend that such "overlapping responsibilities" are the reason for the interagency

7   agreement at issue, and that resolving the claim will "necessarily turn on their

8   responsibilities under the federal and state laws that underpin their contractual

9   relationship, and will necessarily involve substantial issues of federal law." (*Id.*)

10      However, SDCOE has failed to demonstrate that this breach of contract claim

11  arises under federal law and can support jurisdiction.  It may be that resolving this

12  cause of action would ultimately require addressing SDCOE's contentions regarding

13  whether the IDEA imposes obligations with respect to residential placements that are

14  not required for purely educational reasons.  However, there is no mention of federal

15  law in claim four, and there is no indication that allegations regarding federal law could

16  be part of a well-pleaded complaint.   Although SDCOE generally asserts that

17  interpretation of federal law would be necessary, it fails to specify how it would be

18  involved, much less how it would create a substantial and necessary issue. *Compare*

19  *Ormet Corp.*, 98 F.3d at 807 (federal question jurisdiction existed where resolving

20  dispute required determining if terms of contract made Ormet an "owner" within

21  meaning of federal statute). At most, SDCOE suggests that some unspecified provision

22  of the contract might be interpreted in light of some federal law obligation, as

23  implemented by a state law. Although compliance with state law obligations may have

24  motivated the contract, and federal law may have motivated the creation of the state

25  laws, there is no authority or argument before this Court to permit the Court to

26  conclude that it will be necessary to resolve some substantial issue of federal law to

27  address the contract claim.  Certainly, the well-pleaded complaint rule means that

28  SDCOE's arguments about its IDEA obligations cannot create federal jurisdiction to

1   the extent they are a response to anticipated defenses by Regional Center.

2       Accordingly, the Court finds that there is no federal question jurisdiction over
3   the breach of contract claim in the fourth claim for relief, or over the declaratory
4   judgment claim against Regional Center to the extent it relies on the breach of contract
5   claim as a coercive action.  Although SDCOE has had ample opportunity to identify
6   a federal question sufficient to support this Court's jurisdiction, it has been unable to
7   do so.  The Court therefore finds that it would be futile to allow SDCOE to amend its
8   complaint to add additional jurisdictional allegations.

9                     iv.  Attorney's Fees Counterclaim

10      Finally, SDCOE contends that its action for declaratory relief can be justified by
11  a coercive action against SDCOE for attorney's fees.  SDCOE points to the fact that
12  Pollock has asserted a counterclaim for attorney's fees pursuant to 20 U.S.C.
13  § 1415(i)(3)(B) of the IDEA.  It argues that this Court clearly has federal question
14  jurisdiction over this claim.  (Docket No. 99 at 11).  SDCOE characterizes this claim
15  as an effort by the County to recover attorney's fees via Pollock's counterclaim.
16  (Docket No. 109 at 4).

17      SDCOE's first argument about attorney's fees is based upon its claim that it
18  should be reimbursed by the County and Regional Center for its potential liability.
19  (*See* Docket No. 99 at 11.; Am. Compl. ¶¶ 65, 70).  It argues that the right to
20  indemnification can arise from "contract or from equitable principles," and can arise
21  under either state or federal law. (Docket No. 99 at 11 (citations omitted)).  It contends
22  that determining the liability of the County and Regional Center for any attorney's fees
23  would require determining their "relative fault" for causing the fees and costs to be
24  incurred.  (*Id.* at 12).  This, in turn, would supposedly require resolving SDCOE's
25  claims that the County and Regional Center were responsible for placement. (*Id.*)  The
26  Court rejected SDCOE's  efforts to assert jurisdiction based upon its claim for
27  reimbursement, as discussed above.  The Court also notes that even if this Court were
28  to award attorney's fees, SDCOE could presumably pursue reimbursement in a separate

1    proceeding.

2        Defendants contend that this claim has no bearing. Neither the County nor
3    Regional Center is a party to the counterclaim. Further, they contend that the
4    counterclaim is based upon M.P.'s right to a FAPE under the IDEA and the obligation
5    to provide a FAPE that the IDEA imposes on SDCOE. (Docket No. 103 at 7).
6    Defendants contend that because neither is obligated to provide a FAPE, they are not
7    liable for attorney's fees incurred by Pollock for enforcing M.P.'s right to a FAPE.
8    (*Id.*)

9        The Court concludes that Pollock's counterclaim cannot support federal question
10   jurisdiction. At the outset, SDCOE cannot rely on a counterclaim to establish "arising
11   under" jurisdiction for its claims. *See Holmes Grp., Inc. v. Vornado Air Circulation*
12   *Sys.*, 535 U.S. 826, 831 (2002) ("a counterclaim—which appears as part of the
13   defendant's answer, not as part of the plaintiff's complaint—cannot serve as the basis
14   for 'arising under' jurisdiction").[3]

15       To the extent SDCOE states that it could amend the declaratory judgment claim
16   to ask for a declaration regarding the availability of attorney's fees, the claim must
17   nonetheless fail. SDCOE asserts that it could amend the claim to assert that the County
18   is not entitled to recover attorney's fees and costs from SDCOE via Pollock. (Docket
19   No. 109 at 4). At the outset, it would appear that this would only apply as to SDCOE's
20   claim against the County, and not the Regional Center, as SDCOE has not alleged that
21   Regional Center is seeking fees via Pollock.

22       The Court first notes that this proposed amendment appears to be an effort to use
23   the counterclaim as a basis for federal jurisdiction by asserting the validity of SDCOE's
24   defense to the counterclaim in a declaratory judgment action. If such an allegation
25   sufficed to establish federal question jurisdiction, it would effectively permit a party
26   to attempt to impermissibly plead around the restriction of *Holmes Group, Inc. v.*

27

28       [3]The Court is aware that it could exercise supplemental jurisdiction on the basis
     of the dismissed IDEA appeal. This will be addressed below.

13cv1647

1 | *Vornado Air Circulation Systems.*

2       Further, Defendants have not brought a coercive action for attorney's fees under

3 | the IDEA, and there is no basis to conclude that they could ever do so. Indeed, as

4 | Defendants point out, Pollock's right to recover attorney's fees is authorized as part of

5 | the costs awardable to a prevailing party. *See* 20 U.S.C. § 1415(i)(3)(B). Additionally,

6 | although this Court may have jurisdiction where the declaratory judgment defendant

7 | could bring a coercive action to enforce its rights, *Janakes v. U.S. Postal Serv.*, 768

8 | F.2d 1091, 1093 (9th Cir. 1985), SDCOE has not provided this Court with authority

9 | that would allow it to grant declaratory relief based on a coercive action asserted by a

10 | *third party.* The Court further notes that even if the County is funding the lawsuit,

11 | SDCOE has not articulated any basis from which this Court could conclude that the

12 | County is in privity with Pollock or that a declaratory judgment against the County

13 | would prevent Pollock from seeking attorney's fees. *See Richards v. Jefferson Cnty.,*

14 | *Ala.*, 517 U.S. 793, 798-99 (1996).

15       Finally, to the extent jurisdiction *could* be proper, this Court grants Defendant's

16 | request that the Court exercise its discretion not to grant declaratory relief. (Docket

17 | No. 108 at 2). A district court's discretion to hear declaratory actions over which it has

18 | jurisdiction is guided by the Supreme Court's decision in *Brillhart v. Excess Ins. Co.*

19 | *of Am.*, 316 U.S. 491 (1942). *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 672

20 | (9th Cir. 2005). The non-exclusive *Brillhart* factors include: 1) avoiding the needless

21 | determination of state law issues, 2) discouraging forum shopping, and 3) avoiding

22 | duplicative litigation. *Id.* (citations omitted). The Ninth Circuit has outlined other

23 | considerations, such as:

24       whether the declaratory action will settle all aspects of the controversy;
whether the declaratory action will serve a useful purpose in clarifying the

25 | legal relations at issue; whether the declaratory action is being sought
merely for the purposes of procedural fencing or to obtain a 'res judicata'

26 | advantage; or whether the use of a declaratory action will result in
entanglement between the federal and state court systems. In addition, the

27 | district court might also consider the convenience of the parties, and the
availability and relative convenience of other remedies.

28 |

1  *Id.* (quoting *Gov. Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225, n. 5 (9th Cir. 1998)).

2  In the case at hand, the Court finds that these considerations weigh against this Court

3  exercising jurisdiction to consider issuance of a declaratory judgment. First, it is

4  readily apparent that resolving these claims will involve novel analysis of complex

5  state laws and regulations that are best left to state courts. Second, SDCOE can seek

6  to resolve its claims in state court. Third, declining to exercise jurisdiction would

7  avoid duplicative litigation and potential conflicts with state courts, should SDCOE

8  seek to pursue its other claims in state court. This Court can find no possible basis for

9  federal question jurisdiction over the other three remaining claims, and it concludes

10  that the exercise of supplemental jurisdiction would be inappropriate, as discussed

11  below. Finally, the Court notes that the request for attorney's fees is a relatively small

12  aspect of this controversy. To the extent addressing this question would settle other

13  aspects of the controversy and clarify the legal relations of the parties, it does so

14  through a "back door." The briefing on this matter indicates that resolving the central

15  issues will require examining a large number of complex state laws and regulations,

16  addressing novel questions of state law, and issuing rulings with the potential to have

17  serious consequences for state entities. Issues of such magnitude should be fully and

18  explicitly briefed, and justice is not served by indirectly resolving them by issuing a

19  declaratory judgment regarding a third party's motion for costs.

20  SDCOE has failed to establish that this Court has federal subject matter

21  jurisdiction over its declaratory judgment claim against the County based upon its

22  effort to assert the validity of its defense to a third party's counterclaim in a declaratory

23  judgment action. The Court determines that it does not require further briefing on this

24  point, as it would decline to exercise jurisdiction over the declaratory judgment action,

25  even if the request for attorney's fees could serve as a proper basis for jurisdiction.

26  **B. Supplemental Jurisdiction**

27  SDCOE contends that this Court can, and should, exercise supplemental

28  jurisdiction over all of the state law claims. (Docket No. 99 at 13). SDCOE points out

1   that even if this Court grants the instant Motion, it will still have to resolve Pollock's

2   counterclaim for attorney's fees under the IDEA. (*Id.*)  SDCOE argues that the Court

3   should consider the amount of time and energy already expended, pointing out that

4   SDCOE did not voluntarily moot the case against Pollock, that the ruling came nearly

5   a year after the case was commenced, and that the parties have already engaged in

6   litigation over discovery matters. (*Id.* at 13-14).  SDCOE claims that the remaining

7   claims are "by their nature part and parcel of the IDEA dispute that formed the basis

8   of the original proceedings." (*Id.* at 14).  It also notes that if these claims are

9   dismissed, but the claim for attorney's fees and costs remains, it would spawn parallel,

10  multiple litigation. (*Id.*)  SDCOE has also argued that the "cooperative federalism"

11  approach of the IDEA indicates that the exercise of federal jurisdiction will not disturb

12  a congressionally approved balance of federal and state judicial responsibilities. (*Id.*

13  at 10).

14      The County and Regional Center argue that this Court should not exercise its

15  discretion to hear the state law claims.  They point to the fact that a Court may decline

16  to exercise jurisdiction where:

17      (1) the claim raises a novel or complex issue of State law,
        (2) the claim substantially predominates over the claim or claims over
18      which the district court has original jurisdiction,
        (3) the district court has dismissed all claims over which it has original
19      jurisdiction, or
        (4) in exceptional circumstances, there are other compelling reasons for
20      declining jurisdiction.

21  28 U.S.C. § 1367(c).

22      As this Court has dismissed the only claim over which it had original

23  jurisdiction, Defendants contend that factors two and three weigh in favor of declining

24  jurisdiction. (Docket No. 103 at 9).  Further, they contend that interpreting and

25  applying the statutory scheme will involve "complex and novel issues" of California

26  law, and will have the potential to impact the relationships of school districts, counties,

27  and other public agencies. (*Id.*)  They assert that this Court should avoid needlessly

28  deciding state law, and that the interests of comity favor dismissal. (*Id.* at 10).  They

1   point out that the Court has not yet determined the merits of the claims, and that

2   therefore judicial economy does not weigh in favor of retaining the claims. (*Id.*)

3       The Court declines to exercise supplemental jurisdiction over the remaining

4   claims. The only claim over which this Court had original jurisdiction has been

5   dismissed. It is apparent that the remaining claims will require a court to delve deeply

6   into a complex statutory scheme to resolve novel questions of state law.

7   Notwithstanding the fact that some of these statutes or regulations are implementing

8   a federal law, such questions, involving parties which are themselves entities created

9   by state law, are more appropriately decided by state courts, and comity weighs

10  strongly in favor of declining jurisdiction. As this Court has yet to determine the merits

11  of this action, and discovery efforts may still be useful for future state court

12  proceedings, judicial economy does not strongly favor retaining the claims.

13  Defendants concede, and SDCOE does not dispute, that SDCOE will be able to re-file

14  its state law claims in state court pursuant to 28 U.S.C. § 1367(d). (Docket No. 108 at

15  9). SDCOE will therefore not be prejudiced in its ability to pursue reimbursement from

16  Defendants.

17      Accordingly, claims two through five are **DISMISSED WITHOUT**

18  **PREJUDICE.**

19      C. Regional Center's Counterclaim

20      Regional Center's Amended Counterclaim for declaratory relief and breach of

21  contract asserts jurisdiction "on the bases alleged in the FAC." (Docket No. 30 ¶ 2).

22  The parties agree to the dismissal of these counterclaims if this Court dismisses claims

23  two through five. (Docket No. 108 at 9; Docket No. 109 at 8). Accordingly, Regional

24  Center's Amended Counterclaim is **DISMISSED WITHOUT PREJUDICE.**

25                              **CONCLUSION**

26      For the reasons stated above, the Court **GRANTS** the motion. Claims two

27  through five are **DISMISSED WITHOUT PREJUDICE.** The Amended

28  Counterclaim is **DISMISSED WITHOUT PREJUDICE.**

1    SDCOE has had ample opportunity to brief this Court on proposed amendments

2  which could confer federal question jurisdiction.  There is no indication from the

3  record that SDCOE could amend the pleading to establish federal question jurisdiction.

4  To the contrary, the Court finds based on the extensive briefing and proposed

5  amendments that such an effort would be futile and create needless delay.

6  Accordingly, leave to amend is denied.

7    **IT IS SO ORDERED**.

8

9  Dated: September 6 , 2014

10                                                    HON. ROGER T. BENITEZ
                                                      United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28